C. E. ADERHOLT ET ALS. V. C. A. CONDON ET ALS.

(Filed 3 June, 1925.)

1. **Contracts—Independent Contractor—Employer and Employee—Principal and Agent—Evidence—Roads—Highways.**

Whether the relation of contractor and independent contractor exists for the construction of a State highway to be built under contract with the State Highway Commission, depends upon whether the concern signing the contract exercises the right of control over the other concern in the latter's doing the work, and evidence tending to show that the latter was supervised by the former therein, sent money to pay off the laborers thereon, etc., is competent upon the question, under the facts of this case.

2. **Same—Principal and Surety—Laborer—Material Furnishers.**

Where the contractors for the building of a State highway have employed another concern to fulfill their contract under the former's control, the latter is regarded as the agent or employee of the former, and with the surety on the construction bond, is liable to laborers or material men upon default of the agent, whose claims are sufficiently covered by the contract and the surety bond given for its performance.

3. **Same—Liens.**

*Held*, under the facts of this case, that lumber necessary for the preparation of the concrete, etc., used on a State highway constructed under contract with the State Highway Commission, are materials, etc., within the intent and meaning of our statute giving a lien therefor. *Town of Cornelius v. Lampton, ante*, 714 cited and applied.

4. **Appeal and Error—Courts—Agreement as to Findings of Fact—Evidence—Verdict.**

Where the parties to the action have agreed in writing that the trial judge should find the facts and draw his conclusions of law therefrom, the findings so made, supported by competent evidence, are as conclusive, on appeal, as those otherwise found by the jury.

APPEAL by defendants from *Finley, J.*, at March Term, 1925, of SWAIN.

This was an action originally brought by C. E. Aderholt and others against S. J. and C. A. Condon, partners trading under the firm name of Condon & Condon, and National Surety Co. (hereafter called Surety Company). No summons was served on Condon & Condon, they are insolvent and in bankruptcy and abandoned the work. On motion of the plaintiffs and defendant Surety Company, an order was regularly obtained before the clerk making M. Costello and R. Costello, doing business under the firm name of Costello Brothers, parties defendants to the action. Summons was duly served on M. Costello. The original complaint of the plaintiffs against Condon & Condon and Surety Company was adopted as the complaint against Costello Brothers. The action

is for work and labor done and materials furnished by plaintiffs to
Condon & Condon and Costello Brothers in the construction of State
Highway Commission Project No. 980. Defendants, contractors, made a
contract with the State Highway Commission for the improvement of a
certain highway in Macon-Swain counties, between Topton and Almond
17.89 miles long and estimated to cost $285,120. Plaintiffs allege:

"1. That in the year 1922 the defendants, Costello Brothers and Con-
don & Condon, were engaged as contractors in the construction of a high-
way in Swain County, North Carolina, under a contract made and
entered into with the State Highway Commission, and known as Project
No. 980.

"2. That at the time said contract was made for the construction of
said highway, the said State Highway Commission required said de-
fendants, Costello Brothers and Condon & Condon to give a bond to
secure the payment by said contractors of all amounts due by them
for work and labor performed in and about the construction of said
highway and for material furnished for the construction thereof; that
said defendants, Costello Brothers and Condon & Condon, duly executed
said bond and the defendants, National Surety Company, through its
duly authorized officers and agents executed said bond as surety. . . .

"(8) That said bond executed by the defendant, National Surety
Company, is on file with the State Highway Commission, and under
the terms thereof said defendant is obligated to pay the aforesaid
amounts due for work and labor done on said highway and for material
furnished and used in the construction thereof; that the said defendants,
Condon & Condon, are insolvent and have departed from the State of
North Carolina and after due diligence cannot be found therein and
have no property within the said State.

"(9) That the aforesaid plaintiffs presented their claims against
said Costello Brothers and Condon & Condon and the National Surety
Company in writing to the State Highway Commission at Raleigh,
N. C., within the time required by law."

The defendant Surety Company in its answer admits the allegations
in paragraph 1 of complaint, and says:

"2. That the allegations contained in paragraph two are denied, except
that it is true that this defendant became surety for Costello Brothers
and Condon & Condon on a bond made to the State Highway Com-
mission of North Carolina, which said bond is expressly referred to
and made a part of this answer, and the production thereof is demanded
for the purpose of disclosing the liability assumed thereon by this
defendant. . . .

"8. That the allegations contained in paragraph eight are denied, in
so far as they relate to this defendant, except that it is true that this

defendant became surety on the bond made by said Costello Brothers and Condon & Condon to the State Highway Commission, the production of which is demanded as aforesaid, and that this defendant assumed no liability except as by reference to said bond will better appear."

The Surety Company, as a further defense alleges:

"That on or about 1 February, 1922, this defendant became surety on a bond made by Costello Brothers and Condon & Condon to the State Highway Commission of North Carolina, conditioned as therein will better appear, and the sole liability, if any, to plaintiffs in this action is on account of the execution of said bond as surety for said Costello Brothers and Condon & Condon." . . .

The above substantially sets forth the controversy without setting forth the amended complaint and answer of Surety Company.

M. Costello admits allegations 1 and 2 of the complaint and denies the others.

When the case was called for trial it was stipulated and agreed that all matters in controversy, including questions of fact and questions of law, should be heard and passed upon by the court, and that trial by jury be waived, in accordance with the provisions of C. S., 568-571.

The court below, under the agreement before mentioned, rendered the following judgment: "That a contract was duly entered into by the State Highway Commission on 3 February, 1922, with the defendants, Costello Brothers and Condon & Condon, a partnership, for the construction of a highway between Topton and Almond, North Carolina, known as Project No. 980; that thereupon a bond was executed by said defendants as set out in the record duly signed and executed by the defendant, National Surety Company as surety; that after the execution of said contract and bond, the defendants, C. A. Condon and S. J. Condon, under contract with a partnership of Costello Brothers-Condon & Condon began work in the construction of said highway referred to in said contract and bond and that the defendant, M. Costello, representing Costello Brothers, was present during the construction thereof from time to time directing and supervising said work, but the actual construction of said highway was being carried on by said S. J. Condon and C. A. Condon, who had signed the contract and bond with the State Highway Commission, as aforesaid. That said Condon & Condon failed to finish the construction of said highway and after doing certain work in the construction thereof were adjudged bankrupts and are now insolvent. That while the said S. J. Condon and C. A. Condon were engaged in the construction of said highway in the year 1922 they employed the plaintiffs, C. E. Aderholt, W. L. Swanson, Horace Ragsdale and George

Ragsdale, to work in the construction thereof and are due and owing said plaintiffs for work so done in the construction of said highway and labor performed in and about the construction of said roadway, the following sums:   . . .   That during the year 1922 the plaintiff, J. Z. Wright, sold and delivered to said S. J. Condon and C. A. Condon lumber which was used by said Condon & Condon in the construction of said roadway and for which they are due and owing said plaintiff the sum of," etc. . . .   "That claims in writing were duly filed by said plaintiffs with the State Highway Commission for the aforesaid amounts as required by law on 22 August, 1923. That only M. Costello and National Surety Company were served with process. That the defendants, National Surety Company and Costello Brothers, are liable for .the aforesaid amounts due said plaintiffs, on said bond filed with the State Highway Commission and said plaintiffs are entitled to judgment for said amounts due them against said National Surety Company and Costello Brothers."

Upon the foregoing findings of fact, judgment was rendered by the court below for amounts demanded by plaintiffs against M. Costello, a member of the partnership of Costello Brothers and National Surety Company.

The agreement between the State Highway Commission and Costello Brothers and Condon & Condon (latter called contractor) was, in part, as follows: (The work, etc., approximately estimated to cost $285,120).

"That the contractor, for and in consideration of the payment herein specified and agreed to by the party of the first part, hereby covenants and agrees to furnish and deliver all the materials and to do and perform all the work and labor in the improvement of a certain section of highway known as road between Topton and Almond, beginning at station 409-78 and ending at station 135a-39.4, situated in Macon-Swain counties of North Carolina, being approximately 17.89 miles long, at the unit price bid by the said contractor in his proposal, according to the specifications and plans.   . . .   The contractor further covenants and agrees that all and every of the said materials shall be furnished and delivered, and all and every of the said labor shall be done and performed in every respect to the satisfaction and approval of the engineer aforesaid, or his duly authorized assistant, on or before the expiration of four hundred working days.   . . .   The contractor hereby further agrees to receive the prices bid in proposal for furnishing all the materials and labor which may be required in the prosecution and completion of the whole of the work to be done under this contract, or agreement, and in all respects to complete said contract to the satisfaction of the said State Highway Engineer, or his duly authorized assistant."

The contract bond signed by Costello Brothers, Condon & Condon and National Surety Co. (amount of bond $142,560.00) contains the following: *"And shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the contractor is liable."*

The following questions and answers on the part of plaintiff were duly excepted to and assignments of error made by defendants M. Costello and Surety Company:

"Q. State what Mr. Costello did. A. He would come down by the shovel and instruct me how to keep the ditches cleaned and ask me why I didn't get some teeth for the shovel, and tell me how to slope the banks.

"Q. State whether or not Costello Brothers had any equipment. A. Yes.

"Q. You know it of your own knowledge? A. Their names were on the equipment.

"Q. What names were on the equipment? A. Costello Brothers.

"Q. On what? A. On the wagons. All the wagons that were there. ·

"Q. Did you ever have any talk with Costello in which you stated they had paid you off? A. No. I went to Costello's office in Knoxville, and he said he had sent the money down there for them to pay, and he supposed they had.

"Q. Who was that? A. M. Costello.

"Q. What did he say? A. He said he had sent the money to pay us boys off and didn't know what they had done with it.

"Q. Had sent it to who? A. Condon & Condon, I suppose.

"By the Court: Costello said he sent the money to whom? A. Condon & Condon.

"Q. Who did Costello say he sent the money to? A. He said he sent the money down there to them to pay us off.

"Q. Who? A. Condon & Condon.

"Q. Where did he state that to you? A. In his office in Knoxville.

"Q. What boys did he have reference to? A. To my fireman and night-watchman, Ragsdale brothers."

M. Costello in his testimony stated: "In making this contract, Charles A. Condon was acting for the partnership of Condon & Condon, composed of himself and S. J. Condon, and they actually did the work as subcontractors without any supervision or assistance from the partnership of Costello Brothers and Condon & Condon. The original contract was let to Costello Brothers and the two Condon brothers as general contractors, and thereafter Condon & Condon, as a partnership, took

over the work as subcontractors. As matters stood, Condon & Condon were the owners of a one-half interest in the general contract and the entire interest in the subcontract. The contract appearing as defendant's Exhibit 'I' is the only one that was ever entered into between Condon & Condon and Costello Brothers, and is the contract under which all the work was done." . . . His testimony further substantially was: The subcontract (Exhibit "I") was for part of Project 980, being section known as No. 2, beginning at the Nantahala River and extending to Wesser Creek. It was originally made by Condon & Condon with Major E. A. Wilson, who had the contract for the entire Project No. 980. Major Wilson could not make the bond and, by agreement with the State Highway Commission, same was taken over by the partnership known as Costello Brothers and Condon & Condon. The partnership then adopted the subcontract made by Major Wilson with Condon & Condon, who had started the work and carried it on. They did the work as subcontractors, without any supervision or assistance from the partnership of Costello Brothers and Condon & Condon. "At the time the partnership of Condon & Condon went into bankruptcy, the general contractors, Costello Brothers and Condon & Condon, owed them nothing, but they owed us and still owe us. Costello Brothers and Condon & Condon lost money by reason of the failure of Condon & Condon to complete this contract."

At the close of plaintiff's evidence, and at the close of all the evidence, defendants made motions for judgment as of nonsuit. Both were refused, and defendant excepted and assigned error.

The defendants object and except and assign as error the finding and conclusion of the court as follows: "That the defendants, National Surety Company and Costello Brothers, are liable for the aforesaid amounts due said plaintiffs on said bond filed with the State Highway Commission, and said plaintiffs are entitled to judgment for said amounts due them against said National Surety Company and Costello Brothers. The defendants object, except and assign as error the conclusion of the judge that the defendants, M. Costello and National Surety Company, are liable to the plaintiffs in the amounts stated in said judgment and for interest thereon and in entering judgment accordingly. The defendants object and except and assign as error the findings of fact and conclusions of law and judgment as signed and entered," and appealed to the Supreme Court.

*Thurman Leatherwood and Alley & Alley for plaintiffs.*
*S. W. Black for M. Costello.*
*Mark W. Brown for National Surety Company.*

48—189

CLARKSON, J.   Defendants, M. Costello and National Surety Company, in their brief, say:

"We discuss all the exceptions together, as the real question involved is whether the defendant, National Surety Company, is liable on its bond for debts owing by a subcontractor and not covered by the bond. Nothing was due by the contractor to the subcontractor at the time these liabilities were incurred by the subcontractor or subsequent thereto when the subcontractor stopped work.   There were never any contractual relations between the State Highway Commission and the subcontractor, or between the contractor and plaintiffs, and the bond does not cover plaintiffs' claims.   If at the time the subcontractor abandoned the work the contractor had been indebted to the subcontractor for 'furnishing material or performing labor in and about the construction of said roadway,' then the bond would have covered such indebtedness and the amount thereof would have been prorated between plaintiffs.   Plaintiffs can have no more rights against the contractor and the surety company than the subcontractor, and if the subcontractor has already been paid in full, as the uncontradicted evidence discloses, the plaintiffs have no cause of action against the contractor and the surety company.   Should plaintiffs collect from the contractor and the surety company on the facts in the instant case, then a double liability will be placed on a contractor, and settlement with a subcontractor will be no protection whatever against claims incurred by the subcontractor and of which the contractor had no notice.   This case goes a bow-shot further than any rights accorded laborers and material men under our lien laws, which do not apply to public buildings and highways.   Even under those statutes there must be a contractual relation or the right is conferred by statute after notice."

We do not think the position taken by the learned and able counsel for defendants is borne out by the evidence in the case or the findings of the court below, supported by competent evidence.   We think that what is termed subcontractor by defendants was nothing more than an agency.

The facts succinctly are: the State Highway Commission made a contract with Costello Brothers and Condon & Condon to furnish the labor and material and improve the road between Topton and Almond—approximately 17.89 miles long, according to certain plans and specifications.   For the faithful performance of the contract, they and the surety company gave the State Highway Commission a bond in the sum of $142,560, and in the bond agreed: "And shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them or any of them, for all such labor and materials

for which the contractor is liable." The bond is to pay for work and material for which the contractor—Costello Brothers-Condon & Condon —are liable.

The plaintiffs contend that section known as No. 2, beginning at the Nantahala River and extending to Wesser Creek, was part of Project 980, for which the bond was given by the entire partnership composed of Costello Brothers and Condon & Condon, and under contract to improve. That Condon & Condon were agents of the original firm who made the contract and gave the bond and not independent or subcontractors. That the failure of Condon & Condon on section No. 2, and their becoming insolvent and going into bankruptcy, in no way affected the rights of plaintiffs, who worked and furnished material on section No. 2. That they had a cause of action against all—Costello Brothers and Condon & Condon and their bondsmen, the surety company—and the bond was to pay for labor and material for which all the contractors were liable. Plaintiff, to sustain this contention, introduced evidence to the effect that M. Costello came over to the project every two weeks or once a month. He would give instructions. Costello Brothers had equipment on the project; their names were on all the wagons. He went over the job with Condon & Condon whenever he came. That Costello told the plaintiff, Aderholt, that he had sent the money to Condon & Condon to pay the boys off. The direct and circumstantial evidence was abundant for the court below to find "that after the execution of said contract and bond, the defendants, C. A. Condon and S. J. Condon, under contract with the partnership of Costello Brothers-Condon & Condon, began work in the construction of said highway referred to in said contract and bond, and that the defendant, M. Costello, representing Costello Brothers, was present during the construction thereof from time to time, directing the supervising said work, but the actual construction of said highway was being carried on by said S. J. Condon and C. A. Condon, who had signed the contract and bond with the State Highway Commission, as aforesaid." They were not independent or subcontractors, but mere agents or servants.

The test of independence and agency or servant is laid down in 14 R. C. L., pp. 67-8, as follows: "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. So, where the contractor lets a portion of the work to another contractor, the latter's independence is to be determined by the same criterion of the control of the work. In this connection, the ultimate question is not whether the employer actually

exercises control over the doing of the work, but whether he has the right to control. The employer may, in fact, leave to the contractor the details of the work, but if the former has the absolute power to control the work, the contractor is not independent. But whether or not the employer exercises control may, however, be a fact to be considered in determining the precise relations of the parties. The circumstance that an employer has actually exercised certain control over the performance of the work may not only render him responsible for the acts done under his direction, but may be considered as a factor tending to show the subserviency of the contractor. In other words, the fact that the employer has actually exercised control is properly considered as tending to show that he has a right to control. And, on the other hand, the fact that during the performance of the work the employer has exercised no control may be considered as tending to show that he has no right to control. But the mere fact that the employer was present and made suggestions or requested the contractor to hurry the work has no probative force in determining that question." 3 Page on the Law of Contracts (2 ed.), sec. 1728; *Embler v. Lumber Co.,* 167 N. C., p. 463; *Gadsden v. Craft,* 173 N. C., 420.

The defendants contend: "The claim of plaintiff, Wright, for 'lumber and supplies' should not have been allowed for the additional reason that it was not material used in and about the construction of the road. The only testimony on which to base the finding and conclusion of the court is the testimony of Wright himself, as follows: 'I live at Wesser and know the firm of Condon & Condon; the members of the firm are Charley Condon and Sam Condon; they were contractors, building roads, highways; that is, Project 980; I sold them lumber or other supplies; the Condons got it from me, their men that was working for them, Condon & Condon's teams; the lumber was used to put up a rock crusher and in dump forms and one thing and another; the rock crusher was used for the construction of the road; they used some lumber for boxes and dump carts and anything they wanted it for.' If the 'other supplies' be eliminated from the account, and we do not see how that could be done, still the lumber so furnished and used was not covered by the bond."

This matter has been fully discussed in *Town of Cornelius v. Lampton et als., ante,* 714. Other supplies are *ejusdem generis.* Defendants' contention is untenable.

"An independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified." *Gay v. R. R.,* 148 N. C.,

336, 62 S. E., 436; *Young v. Lumber Co.,* 147 N. C., 26, 60 S. E., 654; 16 L. R. A., N. S., 255.

*Justice Walker,* in a well-considered opinion in *Embler v. Lumber Co., supra,* p. 463, says: "The accepted doctrine is that in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed. The proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work or by interfering with the contractor and assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference."

In the consent agreement, as in the present case, the findings of fact by the court below, if there is any evidence to support such findings, are as conclusive as when found by the jury. *Matthews v. Fry,* 143 N. C., 384; *Tyer v. Lumber Co.,* 188 N. C., 268.

By consent, the court below found the facts. There was sufficient competent evidence to base the findings that "the defendant, M. Costello, representing Costello Brothers, was present during the construction thereof, from time to time, directing the supervising said work." Under the facts and circumstances of this case, and finding of facts, we think, under the law, Condon & Condon are agents or servants, and the principle of agency applies, and M. Costello and the surety company liable to plaintiff.

In the judgment of the court below, we can find

No error.