D. W. PLYLER, TRADING AS PLYLER GROCERY COMPANY, v. R. L. ELLIOTT, A. L. ELLIOTT AND C. R. ELLIOTT, TRADING AS R. L. ELLIOTT & SONS, AND MARYLAND CASUALTY COMPANY.

(Filed 27 January, 1926.)

1. **Public Highways—Contracts—Principal and Surety—Bonds—Board and Provisions for Laborers and Livestock—Material and Labor.**

Under the provisions of a surety bond given to the State Highway Commission by a contractor for a public highway, that the contractor would pay every person furnishing material or performing any labor in and about the construction of said highway, the board furnished by the contractor to the laborers or workmen, and the hay, etc., furnished

to the livestock, come within the meaning of the language employed when necessary to the prosecution of the work contracted for, and the surety is liable for this payment.

**2. New Trials—Appeal and Error—Principal and Surety—State Highways.**

Where it does not appear of record on defendant surety company's appeal that the board of laborers and the provisions for livestock were necessary for the construction of a state highway, under the provisions of a contractor's bond, a new trial will be granted for the ascertainment of the fact.

APPEAL from *Shaw, J.,* and a jury, at May Term, 1925, of ROWAN. New trial.

This is a civil action to recover the sum of $2,836.92 and interest alleged to be due for feedstuffs, provisions, etc., used and consumed in the construction of Project No. 525. Defendants, Elliotts and R. E. Boggs, made a contract on 14 December, 1921, with the State Highway Commission of North Carolina, to improve the road between Lexington and Rowan County line in Davidson County, N. C., being approximately 10.24 miles, estimated cost $293,080. The defendant, Maryland Casualty Company, was surety for the Elliotts and Boggs. The bond to the State Highway Commission was for the sum of $146,540. A provision in the bond was as follows: "And shall well and truly pay all and every person furnishing material or performing any labor in and about the construction of said roadway, all and every sum or sums of money, due him, them, or any of them, for all such labor and materials, for which the contractor is liable."

Plaintiff contends: "In order to carry on said project, it was necessary to erect and operate a commissary to properly feed the hands and animals at work on said project. This camp was located about five miles from Linwood, and two miles from Yadkin. Yadkin was on the opposite side of the river, and to reach Yadkin it was necessary to cross a toll bridge. The plaintiff furnished feed and groceries aggregating $2,836.92, which were necessary to and wholly consumed in prosecution of the work provided for in the contract and bond. The feedstuffs were fed to the mules and all of the groceries and other items were used in feeding the hands, and none others, being given to the hands at actual cost and deducted from their wages. The items of tobacco, cigarettes and candy included in the grocery account were given to the hands and deducted from their wages. It was necessary to allot to the hands tobacco and candy, and to feed them in order to keep them in the camp and on the job."

The total of plaintiff's bill was $4,254.08 on which has been paid $1,417.16 leaving a balance of $2,836.92. The feedstuffs and provisions

were furnished the contractors on Project 525 from 4 January, 1923, to 30 June, 1923—$1,572.39 it is alleged was for actual feedstuffs. The plaintiff filed his claim with the State Highway Commission on 26 June, 1923, and the same was acknowledged by it on 28 June, 1923. The work was completed on 4 September, 1923.

Sam Elliott, testified: "I was a foreman with Elliott & Sons from the time the road began in 1922, until we finished the work. My principal work was looking after the feed and supplies. With reference to feeding the hands, we built a camp, hired a cook and fed them, and on Saturdays, we would deduct their board from the amount we owed them. We fed no one except the hands. We charged the hands four dollars a week; later we raised it fifty cents as we were not coming out. We did not make anything on the board. It was necessary to feed the hands; that is the only way we could keep them in the camp. The few items of tobacco, cigarettes and candy included in the account sued on here were deducted from their wages. I guess they had to have these things. The feed went to the mules. We used all of it. It was put in the troughs. The mules did hard work. All the groceries outside the feed was used for the hands. It all went for the hands and mules. I came under that same head myself. I paid for my board every week. All the supplies were used in connection with the camp and wholly consumed there. I bought most of the supplies. A good part of the time I came with the truck. That was mostly my duty. I bought from other wholesale groceries, $1,000 from Overman & Company, some out of Lexington. It was necessary to buy in large quantities. We had something over 100 mules for a while. I suppose from 50 to 100 hands. It was necessary to carry on the work this way to get the work done. We had to do it. This camp was located about a mile and a half yon side of the toll bridge, probably two miles. It was on the National Highway. The toll bridge was between the camp and the village of Yadkin. It was four or five miles to Linwood. We did not make anything out of boarding the hands. That bridge was a toll bridge. People that came to Yadkin had to pay fare."

The charge of the court below was as follows: "The first rule is: 'Is the defendant, Elliott & Sons, indebted to the plaintiff, and if so, in what amount?' The court instructs the jury that if they find the facts to be as testified to by the witnesses, they would answer the issue, 'Yes, $2,836.92, with interest from 1 July, 1923.' Is the plaintiff's claim barred against its recovery from the defendant, Maryland Casualty Company? The court instructs the jury if they find the facts to be as testified to by the witnesses, to answer this issue 'No.' Is the defendant, Maryland Casualty Company, indebted to plaintiff, and if so, in what amount? The court instructs the jury that if they find the facts to be as

testified to by the witnesses, they would answer the issue 'No.' To that portion of the judge's charge, to wit, 'Is the defendant, Maryland Casualty Company, indebted to the plaintiff, and if so, in what amount?' The court instructs the jury that if they find the facts to be as testified by the witnesses, they will answer the issue 'No,' " the plaintiff excepted and assigned error.

Judgment was rendered in accordance with the verdict, exceptions and assignments of error were made to the charge above and the judgment as rendered, and an appeal taken to the Supreme Court.

*Rendleman & Rendleman for plaintiff.*
*Craige & Craige for Maryland Casualty Co.*

CLARKSON, J. The material provision of the bond to be construed is as follows: "And shall well and truly pay all and every person furnishing material or performing any labor in and about the construction of said roadway," etc.

In *Town of Cornelius v. Lampton,* 189 N. C., p. 718, under a similar provision in the bond, it was said: "Instead of using manual labor, the rock material and manual labor undoubtedly coming under the very language of the contract, the contractors substituted for manual labor electric power. This power was used to operate the rock crusher and crush the rock and operate the cable cars to carry the rock from the quarry to the crusher. The crushed rock was then hauled in motor trucks to the roadway. The crushed rock was material, and the electric current or power is substituted for labor—the liability of the Surety Company for manual labor cannot be disputed, and the man-power is exchanged for electric power."

This appeal presents the question as to whether or not the bond covers provisions used to feed the hands, who worked in and about the construction of the roadway, and feedstuffs to feed the mules that worked in and about the construction of the roadway.

The leading case dealing with furnishing provisions is *Brogan v. National Surety Co.,* 246 U. S., p. 257 (62 Law Ed., p. 703). At p. 260, it is said: "The facts undisputed, or as found by the lower court and accepted by the court of appeals, were these: The Standard Contracting Company undertook to deepen the channel in a portion of St. Mary's River, Michigan, located 'in a comparative wilderness at some distance from any settlement. There were no hotels or boarding houses,' and the contractor 'was compelled to provide board and lodging for its laborers.' Groceries and provisions of the value of $4,613.87, furnished it by Brogan, were used by the contractor in its boarding house, and were supplied 'in the prosecution of the work provided for in the contract and the bond

upon which this suit is based. They were necessary to and wholly consumed in such work.' The number of men employed averaged eighty. They were 'boarded' partly on the dredges, partly in tents supplied by the contractor; all under an arrangement made with the labor unions by which the contractor was to board the men and deduct therefor $22.50 a month from their wages. The contract and the bond executed by the National Surety Company bound the contractor to 'make full payment to all persons supplying him with labor or materials in the prosecution of the work provided for in' the contract. The supplies furnished by Brogan under these circumstances were clearly used in the prosecution of the work, just as supplies furnished for the soldiers' mess are used in the prosecution of war. In each case the relation of food to the work in hand is proximate." At p. 262, it is said: "A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated—*Koekee Consol. Coke Co. v. Taylor,* 234 U. S., 224, 58 L. Ed., 1288, 34 Sup. Ct. Rep., 856) as an independent enterprise, undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed. The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract, and would not entitle him who had furnished the groceries used in the boarding house to recover on the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers are materials supplied and used in the prosecution of the public work."

Construing a bond of contractor (for constructing levee along Mississippi River) required under act of Congress, for prompt payment "to all persons supplying labor and materials, in the prosecution of the work," it was held in the case of *U. S., for use of Samuel Hastings Co. v. Laurance,* 252 Fed. Rep., p. 122, that the bond covered bill for feed furnished for mules used in hauling on and about the work, as material used in the work.

In *Taylor et al. v. Connett et al.,* 277 Fed. Rep., 945, affirming the decision of *Judge H. G. Connor,* District Judge for Eastern District of N. C., under similar bond, the circuit court held: In an action on the bond of a contractor, who agreed to construct a breakwater at Cape

Lookout, N. C., the court may take judicial notice that scows (flat bottom boats) of the kind required to transport a large quantity of stone needed for the work could not be obtained in the vicinity of the work. Government contractor and the surety on his bond are liable for a rental of scows hired by a subcontractor to transport materials to the place of work, where such scows were necessary and could not otherwise be obtained.

"Blasting powder, drills, and lumber used up in scaffolds and forms for concrete constructions, are within the protection of a bond given under the Federal statute requiring it to protect persons who furnish labor or materials used in construction or repair of the work. *National Surety Co. v. U. S. Use of Pittsburgh & B. Co.,* L. R. A. (1917 A), 336, 143 C. C. A., 99, 228 Fed., 577." 1 L. R. A. Digest, 984. *Aderholt v. Condon,* 189 N. C., 756.

It may be noted that in the *National Surety Co. v. U. S., supra,* the Circuit Court discusses the Brogan claim, one among many in that controversy, and says: "But it is said they stand on the same basis as the coal for the engine, as they provide the energy which makes the machine—in this case, the human machines—do the work. The District Court, while regarding the question as very close, thought this final step in the reasoning could not be avoided. We find a sufficient distinction in the difference between labor and materials. Coal has been allowed as a material; it is expended as a material; it never is and never can be transformed and merged into that labor which is the 'labor performed,' as distinguished from the 'material furnished,' for each of which the statute gives a right of recovery. The logic of the coal cases—regardless of its persuasiveness—is that the word 'materials' in the statute should be thought to include coal, because the latent energy of the coal was developed into a mere substitute for that human labor which is expressly included in the law, and unless this energy thus put into the work is protected in this way it is not protected at all. On the other hand, the food for the men never contributes to the work, except after it is transmuted into the form of that labor which, as labor, is protected. It is not to be thought that the statute gives twice a claim for the one thing." This reasoning was not followed by the Supreme Court of the United States, the Circuit Court was reversed. *Brogan v. National Surety Co., supra.*

It is almost the unanimous holding of the courts that coal for the engine, which is necessary to aid in making power, comes under "material." The engine would be useless without the coal. By parity of reasoning, the mules would be useless without the feed. We can see no difference in principle between the two. *U. S. for use Samuel Hastings v. Laurance, supra; U. S. Fid. & G. Co. v. Henderson County,* 253 S. W., 835 (Texas).

PLYLER *v.* ELLIOTT.

The record shows that the actual amount for feedstuffs furnished for about 100 mules was $1,572.39. We think the plaintiff entitled to recover for the foodstuffs furnished for the mules. The question arises—how about the provisions for the 50 to 100 men? The District Judge in the *National Surety Co.* case, *supra,* thought the same reasoning applied to the human machinery—the men. We are inclined to the same conclusion, but base our opinion on the *Brogan* case.

The contract which we are construing was dated 4 December, 1921. The *Brogan case, supra,* was decided 4 March, 1918. The *Taylor case, supra,* was decided by *Judge H. G. Connor,* 25 October, 1920. The bond was made after these decisions, and it is presumed that the Surety Company fixed its premiums to meet the holding of these decisions— especially the *Brogan case,* which was against a Surety Company and a well known opinion.

We can see no material difference between the language of the bond required by the U. S., and construed in the *Brogan case,* and the bond in the present case. The distinction is without a difference. In the *Brogan case, supra,* it was said, at p. 262: "As shown by these cases, the act and the bonds given under it must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work. . . ."[2]

It is contended by plaintiff that, on account of the location of the work to be done, it became necessary for the contractors to furnish board for the employees. This does not appear as a fact from the record, but appears from the testimony of witness for plaintiff, Sam Elliott. The amount of the feedstuffs is shown by the testimony of plaintiff. The decision in the *Brogan case* was based on the undisputed facts—on the present record there is no findings of fact. For this reason, the question of the liability of defendant Surety Company, as to provisions furnished to the hands, the necessity, and the amount due for feedstuffs must be submitted to a jury to determine the facts, unless the facts can be agreed upon.

We have carefully examined the able brief of defendant's counsel. We can see no hardship in construing the contract as we have done, following the leading U. S. case on the subject, which defendant Surety Company knew, or ought to have known, was the law when the surety contract was made. There are decisions to the contrary, but the weight of the more recent decisions and reasoning are with plaintiff. There must be a

New trial.