OVERMAN & COMPANY, INC., v. MARYLAND CASUALTY COMPANY, INC.

(Filed 12 January, 1927.)

**1. Roads and Highways — State Highway Commission — Principal and Surety—Contracts—"Materials."**

Where a surety is obligated under the provisions of its bond with the State Highway Commission to pay for the labor and material used in the construction of a State highway in default of the contractor to do so, and the road in question is through a section of the county making it desirable as a good business proposition, and in conformity with general usage of like contractors under the same or substantially the same conditions: *Held,* supplies of groceries furnished for the consumption of the laborers; gas and oil necessarily used for the machinery employed in its construction, and food for the teams engaged in the project, come within the intent and meaning of the words "materials used in the construction of the road," for the payment of which the surety is liable under its contract.

**2. Same—What Are Not Necessaries.**

Candies, cigars, cigarettes, ginger ale and other soft drinks sold by the contractor at a laborers' camp in the construction of a highway for the State Highway Commission to be paid for by the contractor and charged in the pay roll against the laborers buying them, are not necessaries under the terms of the surety bond of the contract.

**3. Statutes—Roads and Highways — State Highway Commission — Presumption—Prospective Effect—Presenting Claims.**

3 C. S., 3846(v), making void a claim for material furnished the contractor for the building of a State highway, unless the claimant has presented it in writing, etc., to the State Highway Commission within six months after the completion of the work, and making such failure a bar to the claimant's right to recover, falls within the rule of presumption that the effect of the statute is to be prospective only, in the absence of an expressed or clearly implied intent to the contrary.

**4. Same.**

And where the contract between the contractor and the State Highway Commission specified that payment thereunder shall be due at a certain time, the statute has no application if its operative effect is fixed therein for a later date.

APPEAL by both plaintiff and defendant from *McElroy, J.,* at September Term, 1926 of ROWAN. No error.

The plaintiff is a corporation engaged in the wholesale feed and grocery business, with its office in Salisbury, N. C. The defendant is a surety company. The plaintiff brought this action against defendant, the surety company, on a construction bond given by Elliott & Sons to the highway commission, to recover the aggregate sum of $2,675.01.

The evidence of plaintiff was to the effect that the work required by the contract made it necessary for Elliott & Sons to keep an average

number of 75 laborers or hands, 65 horses and mules, 14 trucks, and 2 motor cars on the job. It was necessary for the contractors to maintain a camp and commissary at the place of work to shelter and board their hands and care for their horses and mules. Such was the general custom and usage among highway contractors in the State.

During the period between 30 January, 1922, and 2 February, 1923, plaintiff sold and delivered to Elliott & Sons $11,517.10 worth of materials, of which there remains unpaid the sum of $2,675.01. All of these goods were used and wholly consumed in and about the construction of project 525 and were necessary thereto. Plaintiff supplied the camp with the greater part of its needs during the time that this link of the State Highway System was under construction. The account is for part of the goods furnished up 'to 2 February, 1923.

Project No. 525 began in the city of Lexington, ran through a sparsely settled country, and ended in the open country near the Rowan County line and on the bank of. the Yadkin River. It neither ran through nor came near to any town or village during the whole of its course. The undisputed evidence shows that there was no town or village of any consequence other than Lexington (Thomasville was 8 miles beyond Lexington and inaccessible) in Davidson County. From the place of work the best and nearest detour was the State highway detour, a distance of about 15 miles. It was impossible to travel over the regular route to Lexington while construction was going on. In Rowan County the town of Spencer was 4 miles from the nearest place of work, and 14 miles from the furthest place of work. Salisbury was 7 miles from the nearest place of work, and 17 miles from the furthest place of work. To go from Rowan County to any part of the place of work it was necessary to go over a toll bridge over the Yadkin River, the toll being fifty cents a round trip for a truck or motor car.

The hands used by Elliott & Sons were brought mostly from Georgia and South Carolina as Elliott & Sons could not obtain the necessary force in this State without undergoing the danger of home ties keeping the camp force perpetually depleted, for the further away from home they were the more likely would it be that they would stay in camp and work. It was impossible to care for the hands any other way than by maintaining a camp for them. Sam Elliott, witness for plaintiff, testified to the effect that was the satisfactory and businesslike method of handling the men, for if they were not handled that way "you could not get the hands bunched together of a morning."

Elliott & Sons provided in the camp all those things usually used and provided in such camps, including a comparatively small quantity of tobacco and confections. The testimony was to the effect that unless such materials were supplied the negroes would not stay in camp, and

that it was the custom and usage of highway contractors to provide their hands with tobacco and confections. All such supplies and all groceries and provisions used by the men were charged up to them and taken out of their wages. Elliott & Sons first charged the hands $4.00 per week for board, but, finding they were losing money at that rate, raised it later to $4.50. This always went as part of the weekly payroll.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did plaintiff furnish Elliott & Sons hay, grain and foodstuffs for their horses and mules which was used and consumed in and about the construction of project No. 525, as alleged in the complaint, and, if so, what was the amount thereof? Answer: Yes, $1,007.43.

2. Was said hay, grain and foodstuffs necessary in the construction of project No. 525, as alleged in the complaint? Answer: Yes.

3. Did plaintiff furnish Elliott & Sons oils and gas for their trucks and motor cars which was used and consumed in and about the construction of the work on project No. 525, as alleged in the complaint, and, if so, what was the amount thereof? Answer: Yes, $203.91.

4. Was said oil and gas necessary for the construction of the work on project No. 525, as alleged in the complaint? Answer: Yes.

5. Did plaintiff sell and deliver to Elliott & Sons candies, cigars, cigarettes, tobacco, ginger ale and other soft drinks, and if so, what was the amount thereof? Answer: Yes, $549.34.

6. Were said candies, cigars, cigarettes, tobacco, ginger ale and other soft drinks used in and about the construction of the work on project No. 525? Answer: Yes.

7. Were said candies, cigars, cigarettes, tobacco, ginger ale and other soft drinks necessary? Answer: No.

8. Was it necessary for Elliott & Sons to maintain a camp and board and feed their hands as alleged in the complaint? Answer: Yes.

9. During the time that Elliott & Sons were engaged in the construction of project No. 525, was it the custom and usage of highway contractors to maintain a camp and commissary and board and feed their hands on construction projects similar to project No. 525? Answer: Yes.

10. Did plaintiff furnish Elliott & Sons with groceries and provisions which were used and consumed in said camp in and about the construction of project No. 525, as alleged in the complaint? Answer: Yes.

11. If so, what was the amount of groceries and provisions sold Elliott & Sons by plaintiff? Answer: $914.33.

12. What was the date of the last item in plaintiff's account against Elliott & Sons? Answer: 1 April, 1923.

13. Is plaintiff barred by section 3 of chapter 160 of the Public Laws of 1923, as alleged in the answer? Answer: No.

14. Is plaintiff barred by the decree entered in the Federal Court, as alleged in the answer? Answer: No.

15. In what sum is the defendant indebted to the plaintiff? Answer: $2,125.67, with interest from 1 April, 1923."

The other material facts will be set forth in the opinion.

*Lee Overman Gregory for plaintiff.*
*Craige & Craige and Manning & Manning for defendant.*

CLARKSON, J. Elliott & Sons and R. E. Boggs, the contractors, with the Maryland Casualty Company, on 14 December, 1921, gave a bond to the State Highway Commission in the sum of $146,540.00. The material conditions of the bond, to be considered in this action, were:

(1) "For the improvement of a certain section of highway known as State Highway Project No. 525, road between Lexington and Rowan County line, beginning at station 0-00 and ending at station 541-12, situated in the county of Davidson, North Carolina, being approximately 10.24 miles long, approximately estimated to cost $293,080."

(2) "And shall well and truly, in a manner satisfactory to the State Highway Engineer, complete the work contracted for . . . and shall well and truly pay all and every person furnishing material or performing any labor in and about the construction of said roadway, all and every sum or sums of money, due him, them, or any of them, for all such labor and materials, for which the contractor is liable."

There are only three main questions presented:

(1) Defendant introduced no evidence, and at the close of plaintiff's evidence moved for judgment as in case of nonsuit. C. S., 567. The court below denied the motion and defendant assigned error. In this we think the court below correct.

(2) Were said candies, cigars, cigarettes, tobacco, ginger ale and other soft drinks, "materials furnished," within the meaning of the contract and bond?

(3) Is plaintiff barred by section 3 of chapter 160 of the Public Laws of 1923, as alleged in the answer?

In *Brogan v. National Surety Co.,* 246 U. S., 257, the Court said: "As shown by these cases, the act and the bonds given under it, must be construed liberally for the protection of those who furnish labor or materials for the prosecution of public work." This rule of construction was adopted by this Court in *Plyler v. Elliott,* 191 N. C., 54, in a case similar to the one at bar. The plaintiffs in both cases are wholesale grocers of Salisbury, and both of them sold Elliott & Sons materials for use in their construction camp on State Highway Project No. 525.

In *Cornelius v. Lampton,* 189 N. C., at p. 718, this Court said, in reference to the exact words of this bond: "It will be noted that the contract is elastic, it covers 'furnishing material or performing labor in and about the construction of said roadway.' "

The general basis of liability is necessity.

In *Aderholt v. Condon,* 189 N. C., at p. 755, this Court said: "The bond was to pay for labor and material for which all the contractors were liable." This standard of liability, in *Plyler v. Elliott, supra,* required that the materials must have been necessary. In *Gravel Co. v. Casualty Co.,* 191 N. C., at 317, it was said: "The material was, therefore, 'furnished' to the contractor, and, hence of necessity the contractor was liable for the purchase price. Therefore, the contractor being liable, the bond, by its express terms, guaranteed payment."

On all the issues submitted to them the jury found that all of the goods sold Elliott & Sons by plaintiff were necessary and that they were wholly consumed in and about the construction of the work on the project, except the 7th issue as to candies, cigars, cigarettes, tobacco, ginger ale and other soft drinks, which the court below instructed them to answer "No"—that they were not necessities.

(A) *Groceries and provisions:*

The following cases hold that groceries and provisions furnished to the contractor and necessarily consumed in and about the construction of the work are protected by the bond: *Plyler v. Elliott, supra,* 131 S. E., 306; *Brogan v. Nat. Surety Co.,* 246 U. S., 257, 62 L. Ed., 703, L. R. A., 1918d 776; *Fidelity Deposit Co. of Md. v. Bailey* (Va.), 133 S. E., 797; *Southern Surety Co. v. Bank* (Texas), 275 S. W., 436; *Clatsop County v. Feldschau* (Ore.), 196 Pac., 379.

(B) *Hay and Grain:*

The following cases establish that foodstuffs for the horses and mules furnished to the contractor and necessarily consumed in and about the construction of the work is protected by the bond. *Plyler v. Elliott, supra,* 131 S. E., 306; *Early & Daniel v. Surety Co.* (Fourth Circuit), 5 Fed. (2d Series), 670; *U. S., etc., v. Lowrance* (8th Circuit), 252 Fed., 122; *Franzen v. Surety Co.* (Wyo.), 245 Pac. 30; *Chappell v. Surety Co.,* 191 N. C., 703, 133 S. E., 21.

(C) *Gasoline and Lubricating Oil:*

This Court has never directly held that gas and oil are covered by the bond, although the case of *Cornelius v. Lampton,* 189 N. C., 714, by analogy settles the question. In that case "the man power is exchanged for the electric power." The following cases hold that gas and oil necessarily consumed in and about the construction of the work, and for which the contractor is liable, are protected by the bond.

*State, etc., U. S. F. & G. Co.,* 10 Ohio App., 141; *Bartles-Scott Oil
Co. v. Western Surety Co.* (Minn.), 200 N. W., 937; *Smith v. Oosting*
(Mich.), 203 N. W., 131; *Oil Co. v. Commary-Peterson Co.,* (Cal.),
163 Pac., 702; *Fuller v. Brooks* (Okla.), 246 Pac., 369.

We come now to consider "were said candies, cigars, cigarettes, to-
bacco, ginger ale and other soft drinks necessary" within the meaning
of the bond?

Necessary, defined by Webster: "Impossible to be otherwise, or to
be dispensed with, without preventing the attainment of a desired re-
sult; indispensable; requisite; essential."

We would not term them necessaries or luxuries. They are in the
twilight zone. In the *Plyler case, supra,* the testimony of Sam Elliott
in regard to tobacco, etc., was: "The few items of tobacco, cigarettes
and candy included in the account sued on here were deducted from
their wages. *I guess they had to have these things."* This matter was
not passed on in that case. We said, at p. 60: "For this reason, the
question of the liability of defendant, Surety Company, as to pro-
visions furnished to the hands, the necessity, and the amount due for
feedstuffs must be submitted to a jury to determine the facts, unless
the facts can be agreed upon." As a matter of law, we cannot hold
that they were necessary to be furnished under the language of the
bond. In fact, the Court, in *Clatsop County v. Feldschau, supra,*
speaking to the subject says: "We are of the opinion that tobacco,
cigars and cigarettes furnished the men cannot be deemed supplies or
provisions necessary to the prosecution of the work, and this item
. . . is disallowed."

The final proposition: "Is plaintiff barred by section 3 of chapter
160, Public Laws of 1923, as alleged in the answer?" We cannot so
hold. That project No. 525 was finished on 31 August, 1923, and that
no work was done on it thereafter, but that final estimates were made
by the State Highway Commission on 4 September, 1923, is undisputed
on the record.

The plaintiff offered in evidence the general provisions of the con-
tract, including sections 71 and 73, as follows: *"Final Payment:* When-
ever the improvement provided for by the contract shall have been
completely performed on the part of the contractor, and all parts of
the work have been approved by the engineer, according to the contract,
a final estimate showing the value of the work will be prepared by the
engineer as soon as the necessary measurements can be made, all prior
certificates of estimates upon which payments have been made being
approximate only and subject to correction in the final payment. The
amount of this estimate, less any sums that may have been deducted or

retained under the provisions of the contract, will be paid to the contractor within 30 days after the final estimate is forwarded by the engineer, provided that the contractor has properly maintained the road as hereinafter specified. *Maintenance:* The contractor shall maintain the road in first-class condition for 30 days after it is completed, and 15% of the final estimate will be retained by the State Highway Commission to enforce this requirement; except that the engineer may, in his discretion, release the contractor from the further maintenance of sections of the road, not less than two miles in length, which have been satisfactorily maintained under traffic for at least 30 days, unless otherwise provided in 'Special Provisions.' "

Public Laws 1923, section 3, chapter 160 (amendment adding another paragraph to Public Laws, 1921, chapter 2, section 15), is as follows:

"Section 3.   Amend section fifteen by adding another paragraph, which shall read as follows:   'Whenever any contractor engaged in working upon the State highway, and under contract with the State Highway Commission, shall incur liability for labor, material or other cause, and for which such contractor, or his bondsmen, may be liable, all such claims shall be presented in writing to said commission within six months after the completion of said work, and failure to file such claim within said time shall be a complete bar against recovery from said commission or any bondsmen: *Provided,* that this section shall not be in force and effect until six months from the ratification of this act.' "   Ratified 3 March, 1923.   3 C. S., 3846(v).

Is this act prospective or retrospective?   We think it prospective. The matter is clearly stated in 25 R. C. L., p. 786, part sec. 35, under "Statutes": "Every law that takes away or impairs rights that have vested under existing laws is generally unjust and may be oppressive. Hence such laws have always been looked on with disfavor. .   .   .
While the Constitution of the United States and the constitutions of many of the states contain no provisions directly forbidding retrospective laws, such laws are void if they impair the obligations of contracts or vested rights.   Even though the Legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given unless it is distinctly expressed or clearly and necessarily implied that the statute is to have a retroactive effect.   There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied.

Every reasonable doubt is resolved against a retroactive operation of a statute." *Hicks v. Kearney,* 189 N. C., 316, and cases cited: *Comrs. v. Blue,* 190 N. C., 638 and cases cited. See *State Prison v. Bonding Co.,* 192 N. C., at p. 394, construing this act.

In *Trust Co. v. Highway Com.,* 190 N. C., p. 680, at p. 683, it is held: "An action on a bond given to the State Highway Commission, commenced since 10 September, 1925, must be brought in one of the counties in which the work and labor was done and performed, and not elsewhere; only one action may now be brought on such bond. Reference is made to said chapter 260, Public Laws 1925, for the procedure in such action. This statute amends, not C. S., 2445, but chapter 2, Public Laws of 1921, which is the State Highway Act. *It does not apply to actions commenced prior to 10 September, 1925."*

The language of the contract is, "whenever *the improvement* provided for by the contract shall have been *completely performed,"* etc., then provision is made for approval by engineer, final estimate, payment, etc. We think, under the contract, that the improvement was completely performed on 31 August, 1923. The record discloses that no other improvements were made after that date. We think it would be "sticking in the bark" under the language of the contract to hold the work was not completed until approved by engineer, etc., although that was done after the improvement or work was already completed. Under the surety bond, the work contracted for was to be completed in a manner satisfactory to the State Highway Engineer. On 31 August, 1923, the work was completed. On 4 September, 1923, the final estimate and acceptance was made. J. W. Jenkins, the resident engineer for the Highway Commission, in his testimony, says: "I began work there in December, 1921, and stayed there until the *work was completed the last of August, 1923."*

The statute became operative on 3 September, 1923, after the work was completed and a day before the final estimates and acceptance was made. Under the facts and circumstances of this case, we think the act was prospective—the work was completed before the act went into effect and the act has no application.

The excellent brief of plaintiff's counsel has been helpful.

We can find in the judgment below

No error.