JENKINS HARDWARE COMPANY v. GLOBE INDEMNITY COMPANY.

(Filed 20 September, 1933.)

1. **Principal and Surety B b—Determination of whether items furnished contractor on public construction are "material" covered by bond.**

In determining whether items furnished a contractor in the construction of a public highway are materials used in the construction for which the surety on the contractor's bond is liable, or tools or equipment of the contractor for which the surety is not liable, the general rule is that such items as are necessary and indispensable to the performance of the contract, which the parties reasonably contemplate will be incorporated into the work or consumed in the performance of the contract and which lose their identity in the finished product are to be regarded as material, and in this case there was evidence that some of the items furnished the contractor, including hatchets, shovels, axes, etc., were constituent parts of the equipment of the contractor, and a directed verdict against the surety on the contractor's bond for such items was error.

2. **Same—**

Whether items furnished a contractor in the construction of a public highway are material used in the construction, or tools and implements of the contractor is a question for the jury where the evidence is conflicting, and a question of law where the facts are admitted.

3. **Same—Where commissary is necessary to performance of contract and is a part of the contract of hire, items therefor are "labor."**

Where a contractor in the construction of a public highway is compelled as a matter of necessity to furnish his laborers board and lodging as a part of their compensation, deducting his charges therefor from their wages, items necessary for such commissary are covered by the contractor's bond providing for the surety's liability for labor and materials used in the construction, but under the evidence in this case the surety could not be held liable for items used in the commissary, there being no showing that such commissary was necessary to the performance of the work or that the boarding and lodging of laborers was a part of the contract of hire for which deduction could be made from their wages.

CIVIL ACTION, before *McElroy, J.,* at October Term, 1932, of WILKES.

On or about 6 February, 1922, the State Highway Commission made a contract with Hyde and Baxter for the construction of a portion of

the highway system of North Carolina between Wilkesboro and Millers Creek in Wilkes County. The proposed road was 5.97 miles long and was known as State Project No. 782. The contractor gave a surety bond executed by the defendant, Globe Indemnity Company. This bond provides that the contractor shall comply with the terms and conditions of the contract and complete the work according to the terms thereof. It further stipulates that the contractor "shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which a contractor is liable."

On various days from 27 February, 1922, to December, 1922, the contractors purchased from the plaintiff, Hardware Company, various items, such as nails, lanterns, hatchets, axes, axe-handles, shovels, padlocks, hasps, galvanized pipe, hose, mattocks, cross-cut saws, wrecking bars, roofing, hinges, post-hole diggers, locks, wheelbarrows, mattock handles, hammers, water pails, blasting machine, wrenches, lock-pads, dynamite, nipples, unions, valves, engine and cylinder oil, jack, water gauges, washers, lugs, wire, bushings, couplings, railroad spikes, sheet iron, rope, steam whistle, scoops, screws, pliers, pipe cutters, pencils, paint, bolts, dishes, chains, cots, mattresses, pillows, bed springs, skillets, frying pans, alarm clock, forks, coffee pots, wash pans, teaspoons, towels, pitchers, wall lamps, dippers, butcher knife, and many other items shown on the itemized statement in the record.

The contractor abandoned the project in December, 1922, and thereafter the work was completed by the defendant surety in September, 1923. At the time the surety took charge of the work it also took charge of the equipment of the contractor, and when the work was finished certain parts thereof were sold. There was testimony from a witness for the plaintiff that lanterns usually last for one or two seasons, and that hatchets, axes, picks, shovels, wrecking bars, padlocks and wheelbarrows usually last sometime, depending upon the use. There was testimony that "it is necessary to have fresh stone, sand and cement in the construction of a concrete road. It is necessary to apply water upon the concrete. They have to put a pipe line on the road and keep it watered for fifteen days after it is poured. . . . It is necessary to use pipe in getting water to the road. . . . Shovels, picks, wheelbarrows, lanterns, hatchets, padlocks, mattocks, wrecking bars and posthole diggers are part of the equipment of an ordinary contractor. A road could not be built under construction without them. You have got to have that equipment." Another witness said: "The company built three houses for storing cement and built some shacks to board the men. They kept boarders and charged them so much for board.

. . . They covered these buildings with tar paper. . . . There was a kitchen at the quarry for the hands. . . . I saw knives, forks, and all kinds of equipment for a kitchen. . . . They had a camp for the hands." Another witness said: "I was in and out of the camp several times after I was foreman. This consisted of anything a kitchen and boarding house would consist of. Several of the hands had their families and lived there. I never was in it, but I suppose they would have beds and cots. I know the employees lived at the camp." The manager of plaintiff testified: "The camp that was established over on the Finley property was operated in connection with project 782 by Hyde and Baxter. They furnished the hands beds and meals. They had a commissary, kitchen and sleeping quarters. This labor they had was mostly colored. There wasn't any colored boarding houses in North Wilkesboro."

There was also evidence that some of the stone quarried by the contractor was sold to other parties.

The trial judge submitted two issues, as follows:

1. "Is the defendant indebted to the plaintiff, and, if so, in what amount?"

2. "Is the plaintiff's cause of action barred by the statute of limitations?"

The trial judge charged the jury: "If you believe the evidence and find the facts to be as testified to by the witness and shown by the records introduced in evidence in this case, you will answer the first issue "Yes, $2,972.13." No point is made with reference to the statute of limitations, and that phase of the case is eliminated.

From judgment upon the verdict the defendant, Surety Company, appealed.

*T. C. Bowie, J. H. Whicker, and Trivette & Holshouser for plaintiff.*
*Jones & Brown for defendant, Surety Company.*

BROGDEN, J. What are materials within the purview of a road contractor's bond of the type disclosed by the present record?

This Court has heretofore determined that certain specified articles constitute material within the purview of a road contract. These include lumber used for construction of a rock crusher, dump forms, etc., groceries for workmen where a commissary is necessary, feed for teams, blasting powder and drills "used up in scaffolds and forms for concrete construction," gasoline and lubricating oil. *Aderholt v. Condon,* 189 N. C., 748, 128 S. E., 337; *Plyler v. Elliott,* 191 N. C., 54, 131 S. E., 306; *Overman v. Casualty Co.,* 193 N. C., 86, 136 S. E., 250; *Grocery Co. v. Ross,* 194 N. C., 109, 138 S. E., 537. Moreover, it has been held

that the rental of a ditching machine, wages of State convicts, electric power to operate a rock crusher, rentals of steam shovel and boiler for operating drills are deemed to be labor for such construction. *Sheflow v. Pierce,* 176 N. C., 91, 97 S. E., 167; *State Prison v. Bonding Co.,* 192 N. C., 391, 135 S. E., 125; *Wiseman v. Lacy,* 193 N. C., 751, 138 S. E., 121.

This Court has also definitely declared that plant facilities, instrumentalities or those articles usually classified as equipment, tools and implements of a contractor are neither labor nor material. A comprehensive definition of material is found in *Fulp v. Power Co.,* 157 N. C., 154, 72 S. E., 869. The court held that material "is something that is consumed in the use, as coal, for instance, or labor performed, . . . or is such material as goes into and makes part of the realty or the product in such a way as to be indistinguishable from the mass, as timber put into a building or cotton that is manufactured, etc.; but where the subject-matter for which the debt is incurred keeps its identity, as an engine, even though built into the wall, this section does not apply, because the party had his remedy by retaining title or taking a mortgage on the property sold." Obviously the foregoing refers to the lien statute, but no sound reason is apparent which would give a different definition to "materials" when used in a lien statute or when used in a contract relating to public improvement.

One of the latest utterances upon the subject comes from the Court of West Virginia in the case of *Rhodes v. Riley,* 169 S. E., 525: The Court said: "It is generally held that the surety of a contractor on a public work is not liable for the price of anything in the contractor's regular equipment. A contractor is expected to have such equipment as would ordinarily be used in the performance of his contract. The law was not intended to permit a contractor to go into a bonded job with a run-down outfit and have it rebuilt at the expense of his sureties. . . . The regular equipment is furnished the contractor upon his own credit presumably, and not upon the implied credit of the public." This Court in *Cornelius v. Lampton,* 189 N. C., 714, 128 S. E., 334, declared: "We would say that the rock crusher and cable cars were instrumentalities and not included in the contract." The Supreme Court of Iowa in *Surety Co. v. Des Moines,* 131 N. W., 870, has declared that lanterns, sledges, chisels, axes, bolts, washers, etc., are included in the working equipment of a contractor, and that the purchase of such articles imposes no liability upon the surety. The Missouri Court construed the question in *State, Ex Rel. Hernleben v. Detroit Fidelity & Surety Co.,* 21 S. W. (2d), 494, and declared that "plows, graders and machinery generally used in the performance of the contract remained the property of the owner whose duty it is to keep them in

repair and in workable condition." And in *Kansas City v. Yeomans,* 112 S. E., 225, it was held that rope, picks, pickhandles, chains, buckets, spades, shovels, track spikes, rubber boots, hatchets, hose coupling, and wire rope are such as constitute a part of the contractor's plant or his tools and implements with which to do the work. See, also, *Union Indemnity Co. v. State,* 118 Southern, 148; *Gary Hay & Grain Co. v. Fidelity Deposit Co.,* 255 Pac., 722; *Fidelity & Deposit Co. of Md. v. Bailey-Spencer Hardware Co.,* 133 S. E., 799.

The boundary line between articles deemed to be materials and articles deemed to constitute the tools, implements, instrumentalities and equipment of a contractor, lies deep in fog. In some states statutes are more comprehensive and inclusive than in others. Contracts and bonds in many cases contain variable wording. Consequently there is no chopped line in this field of decisions.

While in a large measure the solution of cases of this type depends upon given facts and circumstances, there are certain definite principles which aid in determining whether given articles are to be classified as materials or tools, implements or equipment. The decisions in this State seem to proceed upon the theory that material consists of such articles as (1) are necessary and indispensable to the performance of the contract; (2) which the parties must reasonably contemplate will be incorporated into the work or be consumed in the performance of the contract; and (3) which lose their identity in the finished product, so as to be indistinguishable from the mass.

Applying the principle deduced from our decisions, it is apparent that some of the articles involved in the present suit are not materials. There was evidence that pipe, shovels, picks, wheelbarrows, lanterns, hatchets, shovels, padlocks, axes, mattocks, etc., were constituent parts of the equipment of the contractor, and hence to be classified as tools and implements. There was also testimony that many of the articles mentioned, were not used up in the work or consumed in the performance of the contract, but were actually moved away and perhaps sold to third parties when the project was completed. In other words, if given articles are of such nature or type that they must necessarily be consumed in prosecuting the work and thus lose their identity in the finished product, then such articles must be classified as materials, otherwise as a part of the instrumentalities, tools, implements and equipment of the contractor. Therefore, the trial judge was in error in holding as a matter of law that all of the items described in the pleadings and evidence constituted materials for which the surety would be liable. It is the function of the jury upon conflicting evidence to determine whether such articles are materials or tools, implements or equipment. Of course, upon admitted facts, the question is one of law.

The articles involved in the operation of the commissary or boarding house for employees stand upon a somewhat different footing. Manifestly, if a contractor, as a matter of necessity, was compelled to furnish board and lodging for his workmen as a part of their compensation, deducting the price of such board and lodging from wages paid, then the principle announced in *Brogan v. National Surety Co.,* 246 U. S., p. 257, 62 L. Ed., 703, would apply, and the surety would be liable therefor. But there is no evidence in this case that board and lodging were necessary and indispensable, or a part of the contract of hiring, or based upon any contract or agreement that the contractor should deduct charges therefor from the wages of the worker. This principle was fully discussed and applied in *Grocery Co. v. Ross,* 194 N. C., 109. Consequently, all items for dishes, roofing, beds, bedding, mattresses, etc., involved in the operation of the commissary impose no liability upon the surety, upon the facts disclosed at the trial.

Reversed.