## TAYLOR et al. v. CONNETT et al.

## UNITED STATES, to Use of NORFOLK R. CO., v. D. L. TAYLOR & CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1921.)

No. 1901.

1. **United States ☞67(1)—Contractual relations with government contractor unnecessary to recovery on bond.**

   It is not essential to a right to recover on a bond of a government contractor that a contractual relation should exist between the claimant and the contractor.

2. **Evidence ☞20(1)—Court takes judicial notice scows could not be obtained in vicinity of work.**

   In an action on the bond of a contractor, who agreed to construct a breakwater at Cape Lookout, N. C., the court may take judicial notice that scows of the kind required to transport a large quantity of stone needed for the work could not be obtained in the vicinity of the work.

3. **United States ☞67(3)—Evidence held to sustain charge for scows leased for contractor's work.**

   In action on a government contractor's bond, evidence *held* to show that an intervener's claim for the rental of scows leased to a subcontractor for the amount which the subcontractor had agreed to pay and for towage and repairs was a reasonable charge, if recovery were based on quantum meruit.

4. **United States ☞67(2)—Government contractor's surety is liable for hire of scows for transportation of material to work.**

   Government contractor and the surety on his bond are liable for a rental of scows hired by a subcontractor to transport materials to the place of work, where such scows were necessary and could not otherwise be obtained.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Washington; Henry G. Connor, Judge.

Suit by the United States, to the use of the Norfolk Railroad Company, against D. L. Taylor & Co. and others, to recover on the bond given by the government contractor, in which L. R. Connett and another intervened. From a judgment (268 Fed. 635) allowing the claim of the interveners, defendants bring error. Affirmed.

Clarence A. Tucker, of Baltimore, Md., and Julius F. Duncan, of Beaufort, N. C. (J. N. Ulman and Knapp, Ulman & Tucker, both of Baltimore, Md., on the brief), for plaintiffs in error.

R. Clarence Dozier, of Norfolk, Va. (Baird, White & Lanning and Edward R. Baird, Jr., all of Norfolk, Va., on the brief), for defendants in error.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

KNAPP, Circuit Judge. In this suit on a contractor's bond, two subcontractors, L. R. Connett and the Delaware Dredging Company, filed petitions of intervention. Judgments having been rendered in their favor in the court below, defendants brought the case here on

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

writ of error. Afterwards, and before argument, the Dredging Company's claim was settled and an appropriate order entered; the controversy with that company will therefore be disregarded.

As to Connett's claim these facts appear: In March, 1915, D. L. Taylor & Co., a partnership, entered into contract with the United States for the construction of a breakwater and shore connection at Cape Lookout, N. C. The Fidelity & Deposit Company of Maryland became the surety on their bond, which was conditioned for the due performance of the contract and "full payments to all persons supplying them labor or materials in the prosecution of the work provided for in said contract."

It is evident from the testimony, and all parties must have understood, that the large amount of stone required, nearly a million and a quarter tons, could not be procured, except at a considerable distance from the site of the breakwater. The stone was in fact brought by rail from the quarry to Morehead City, where it was transferred to scows and towed to destination. It is not open to serious doubt that this was the most feasible arrangement which the conditions permitted. Taylor & Co. contracted with one Seely to do portions of the work, including the furnishing of scows to transport the stone. Seely rented four scows from Connett, and the latter's claim is for the agreed hire of the same and other obligations connected with their use.

As allowed by the trial court, this claim consists of five items, namely, hire of scows, $4,599.50; towing same, $1,519; repairs of damages to the scows, $1,795.25; wages paid to captains, $194.48; and use of scows by Taylor & Co., $284—or a total of $8,392.21, with interest thereon from July 8, 1918.

[1] The defendants argue that Connett is not entitled to recover: (1) Because there was no contract relation between him and Taylor & Co.; (2) because his claim is for neither "labor" or "materials" within the terms of the statute or purview of the bond; (3) because his contract with Seely was breached by himself; and (4) because in any event his rights must be limited to the actual "user" of the equipment in "the prosecution of the work," and no facts are shown from which the quantum of such user can be determined. The first of these contentions is clearly without merit, as will appear from the authorities cited below; the others will be briefly examined.

[2] We may take judicial notice that scows of the kind required were not to be had at Morehead City or in that vicinity, and there was no attempt to show that they could have been procured at any place nearer than New York, where they were in fact obtained, and where Connett resided. Seely hired from him two deck scows for $5.50 a day each, and two other scows, described as dumpers, one for $8 and the other for $10 a day, such rental to be paid from the date of delivery in New York until the scows were returned to that port. In addition, Seely agreed to pay for towing the scows from New York to the work and back again, to supply captains therefor, and to make all needed repairs, so that the scows would be in substantially the same condition when restored to the owner as when they were taken by the

lessee. One of the scows was delivered in April, 1915; the others, in May of that year. The $4,599.50, charged and allowed, is the aggregate amount of rental at the contract price for the time from the delivery of the scows to Seely until they were surrendered by him to Taylor & Co., as will presently be explained.

For reasons which may here be omitted, Connett paid the towing bills, amounting to $1,519, and also the wages of the captains, amounting to $194.48; it is not disputed that Seely owes him those amounts. Two of the scows were damaged while in Seely's possession, and the necessary repairs cost, or were estimated to cost, the sum of $1,795.23. The reasonableness of these charges is not questioned, or the liability of Seely therefor under the terms of his contract with Connett.

How long it took to tow the scows to Morehead City, or when they arrived there, is not shown. It appears, however, that they were not employed in transporting stone to the breakwater until about the 26th of June, and so defendants say that they were not in use prior to that date. But Seely testified that they were used, presumably before, to carry materials for a mile or thereabouts of railroad track, which had to be built in order to get the stone to the pier, where it was transferred to the scows. The time consumed in this service is not disclosed.

About the 21st of September, for reasons which are only inferable, Seely "threw up the job" and turned over his equipment to Taylor & Co. This is the breach of contract alleged by defendants. Connett was notified by wire, and immediately sent a Mr. Allen to look after his interests. The latter testified that when he got there the scows were in possession of Taylor & Co. and that they voluntarily surrendered them to him as Connett's representative. The record is extremely meager and indefinite as to what then occurred, but as nearly as we can make out dispute arose as to the rental which Taylor & Co. should pay from the time the scows came into their possession, and for the further time the use of them was desired, as the result of which the scows were removed from the work.

[3] In determining the question of defendants' liability, which is the real matter in controversy, account must be taken of the whole situation. The testimony is convincing that the use of scows was the most, if not the only, practicable means of getting this immense quantity of stone to the breakwater. They were a necessary facility for the prosecution of an important public work. Indeed, it is hardly too much to say that scows had to be procured, whatever in reason might be the cost. Nor, so far as appears, were they obtainable nearer than New York, from which place and back again they, of course, had to be towed. Moreover, Connett testified in substance that he rented the scows at a low figure, because Seely agreed to keep them a year; that the rate for a short period would have been much higher; and that he accepted their return at the end of five months. because he "didn't want to see Seely go under," and "thought he might pull through and pay me." In short, there is no showing, nor was any effort made to show, that this practically indispensable service could have been secured elsewhere or otherwise for any less sum than the trial

court awarded; that is to say, whether measured by the terms of Seely's contract or viewed as a quantum meruit, the amount allowed cannot on this record be held unreasonable.

[4] That the items of Connett's claim, to the extent adjudged valid by the court below, are covered by the bond in suit, seems established beyond doubt by numerous decisions of the Supreme Court. It is sufficient to quote the following from the recent case of Brogan v. National Surety Company, 246 U. S. 257, 38 Sup. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, which is very much in point, and in which previous cases are cited and reviewed:

"This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work. Thus in Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 34, the claims for which recovery was allowed under the bond, included not only cartage and towage of material, but also claims for drawings and patterns used by the contractor in making molds for castings which entered into the construction of the ship. In United States Fidelity Co. v. Bartlett, 231 U. S. 237, where the work contracted for was building a breakwater, recovery was allowed for all the labor at a quarry opened 50 miles away. This included, as the record shows, the labor not only of men who stripped the earth to get at the stone and who removed the débris, but carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry dock for shipment, and who repaired the tracks upon which the cars moved. And the claims allowed included, also, the wages of stablemen, who fed and drove the horses which moved the cars on those tracks. In Illinois Surety Co. v. John Davis Co., 244 U. S. 376, recovery was allowed not only for the rental of cars, track, and other equipment used by the contractor in facilitating his work, but also the expense of loading this equipment, and the freight paid thereon to transport it to the place where it was used. As shown by these cases, the act and the bonds given under it must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work."

The judgment in favor of Connett will be affirmed.