TOWN OF CORNELIUS, INCORPORATED, v. CLARK S. LAMPTON AND ROY W. BURKS, PARTNERS, TRADING AS LAMPTON-BURKS COMPANY; LAMPTON-BURKS COMPANY, A CORPORATION, AND NATIONAL SURETY COMPANY, INCORPORATED.

(Filed 3 June, 1925.)

Contracts—Principal and Surety — Highways — Construction—Bonds—Material—Labor—Electricity.

Electric power used in the crushing of rock for the construction of a highway and coming within the terms of the contract of construction, is a part of the value of labor or material necessary for the construction of a highway and comes within the intent and meaning thereof when thus expressed and covered by the bond accordingly given.

APPEAL by defendants from *Lane, J.,* on agreed statement of facts, at February Term, 1925, of MECKLENBURG.

The following is the agreed statement of facts:

The plaintiff, the town of Cornelius, is a municipal corporation, duly organized, existing and doing business under the laws of North Carolina, being located in the county of Mecklenburg, State of North Carolina, and was fully authorized to enter into the contract to furnish electric power, hereafter mentioned, and such contract was duly and properly entered into between the plaintiff by its proper officers and the defendants hereafter named.

The defendants, Clark S. Lampton and Roy W. Burks, partners, trading as Lampton-Burks Company, entered into a contract with the State Highway Commission of North Carolina, which is described in the bond hereinafter set forth, and later this contract was taken over by the defendant, Lampton-Burks Company, a corporation which had in the meantime been organized.

The defendant, National Surety Company, is a corporation duly organized, existing and doing business under the laws of the State of New York, but maintaining an office and doing a surety and bonding business in the State of North Carolina.

On 20 March, 1922, the defendants, Clark S. Lampton and Roy W. Burks, entered into a contract with the State Highway Commission of North Carolina, which is described in the following bond, and on the same date the said defendants as principals and the National Surety Company as surety executed the following bond:

CONTRACT BOND PROJECT No. 654

Know all men by these presents, That we, Lampton and Burks of Louisville, Ky., hereinafter called the "Principal," and National Surety Co., a corporation incorporated under the laws of the State of New York, hereinafter called the "Surety," are held and firmly bound unto the State Highway Commission of North Carolina in the full and just sum of one hundred and thirty-seven thousand, six hundred and eight dollars ($137,608), lawful money of the United States of America, to be paid to the said State Highway Commission of North Carolina, its successors or its assigns, to which payment well and truly to be made and done we bind ourselves, our heirs, executors, administrators and successors, jointly and severally, firmly by these presents.

Sealed with our seals and dated this 20 March, A. D. 1922.

Whereas, the above bounded "Principal" has entered into a contract with the said State Highway Commission of North Carolina, bearing even date herewith, for the improvement of a certain section of highway known as Road, between Project No. 653 and Mecklenburg-Iredell County line, beginning at Sta. 355-40.8 and ending at Sta. 892-08, situated in the county of Mecklenburg, North Carolina, being approximately 10.1 miles long. Approximately estimated to cost two hundred and seventy-five thousand, three hundred and sixty dollars ($275,360); and,

Whereas, it was one of the conditions of the award of the State Highway Commissioner, acting for and on behalf of the State Highway Commission of North Carolina, pursuant to which said contract was entered into, that these presents should be executed;

Now, therefore, the conditions of this obligation are such that if the above bounded "Principal" as contractor shall in all respects comply with the terms of the contract and conditions of said contract, and his, their, and its obligations thereunder, including the specifications therein referred to and made part thereof, and such alterations as may be made in said specifications as therein provided for, and shall well and truly,

and in a manner satisfactory to the State Highway Engineer, or his duly authorized assistant, complete the work contracted for, and shall save harmless the State Highway Commission of North Carolina from any expense incurred through the failure of said contractor to complete the work specified, or for any damages growing out of the carelessness of said contractor, or his, their, or its servant, or for any liability for payment of wages due or material furnished said contractor; and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them for all such labor and materials for which the contractor is liable;

And, also, shall save and keep harmless the said State Highway Commission of North Carolina against and from all losses to it from any cause whatever, including patent, trade-mark, and copyright infringements in the manner of constructing said structures, then this obligation to be void, or otherwise to be and remain in full force and virtue.

(Signed)   Lampton & Burks.   (Seal)
By Clark S. Lampton.   (Seal)

Witness: John A. Vetter.
         Allen E. Smith.

National Surety Co.
(Surety Company)
(Signed)   By Max T. Payne,
Attorney in Fact.

Attest: Kate Renn, Secretary.

The defendants, Lampton & Burks, proceeded to construct Project No. 654 as described in the above bond and contract therein referred to, and early in 1922 entered into a contract with the plaintiff by which the plaintiff agreed to furnish the defendants the electric power necessary to operate a rock crusher which belonged to said Lampton & Burks, and also to operate cable cars as hereinafter mentioned. In accordance with said contract, the plaintiff furnished said Lampton & Burks, partners, and their successor, Lampton-Burks Company, Incorporated, electric current over a period from May, 1922, until 1 July, 1923. The plaintiff was paid according to contract for all the electric power so furnished, except a balance of fifteen hundred twenty and no-100 dollars ($1,520.00), which became due on 1 July, 1923. The defendant, National Surety Company, if liable to the plaintiff at all is liable for the sum of $1,520.00 with interest thereon from 1 July, 1923, until paid. Demand was properly made by plaintiff upon defendant, National Surety Company, for payment of this amount, which demand

was refused.  The liability of Lampton & Burks, as partners, and Lampton-Burks Company, Incorporated, is admitted, but the court found as a fact, by agreement of counsel upon evidence taken at the hearing, that these defendants are insolvent, and a judgment has been rendered against them in this action, but has not been, and cannot be, collected at this time.  The due execution of the above-mentioned bond by defendant, National Surety Company, is admitted.

The electric current or power furnished by plaintiff to said defendants was used by said defendants to operate a rock-crusher belonging to them, and to operate cable cars in the following manner: rock was taken out of a quarry belonging to one T. B. Knox, with whom the said defendants had contracted for the removal of such rock, to the crusher approximately seventy-five yards distant by means of electrically driven cable cars, and when it had been crushed in said crusher into sizes varying from very fine gravel to about two-inch rock was then hauled by means of motor trucks to the said roadway or highway above described, and was there put into the roadbed and became an essential and permanent part of said roadway; it being necessary that the rock taken from the quarry be crushed before it could be used in the construction of said roadbed; since the rock as taken from the quarry was in large sizes totally unfit for use in road building in that condition.  All of the electric current on which the plaintiff's claim is based was actually used in operating the crusher, as above set forth, and in operating cable cars as above mentioned, and the entire roadway, known as Project No. 654, more than ten miles long, was constructed of rock crushed in the above mentioned crusher, which was operated by electric power furnished by the plaintiff with the exception of a few cars of rock purchased elsewhere by the defendants, and with the exception of cement and asphalt used in said roadway.

The plaintiff filed its claim, as above described, with the defendant the National Surety Company, and with the State Highway Commission of North Carolina within six months after completion of work upon said highway.

*Frank H. Kennedy for plaintiff.*
*S. Brown Shepherd and Pharr & Currie for defendants.*

CLARKSON, J.  The sole question presented is, whether electric power furnished by the plaintiff, the town of Cornelius, for a rock crusher and cable cars is "material or labor" or both, within the terms of the bond signed by the National Surety Company in behalf of Lampton & Burks on a highway job near Charlotte, the wording of the said bond being

as follows: "And shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them for all such labor and materials for which the contractor is liable."

We are not construing a lien statute, but a contract. It will be noted that the contract is elastic, it covers "furnishing material or performing labor *in and about the construction of said roadway.*" There is no dispute that crushed rock is material and covered by the contract. If the crushed rock for the roadway was purchased outright, we would have no controversy. Its value would be determined by the rock and cost of crushing it. To build the roadway, under the contract for which the bond is given, the rock varies in size from very fine gravel to about two-inch rock. It is necessary that this kind of rock be used under the contract in the construction of the roadbed. Instead of buying this rock crushed for the roadway, it can be presumed that the contractor, to get the crushed rock cheaper would use all reasonable means to do it themselves, probably making a less liability on the Surety Company. The contractors purchased the rock and removed it from the quarry about 75 yards distant to the rock crusher, which crushed it. Instead of using manual labor, the rock material and manual labor undoubtedly coming under the very language of the contract, the contractors substituted for manual labor electric power. This power was used to operate the rock crusher and crush the rock and operate the cable cars to carry the rock from the quarry to the crusher. The crushed rock was then hauled in motor trucks to the roadway. The crushed rock is material, and the electric current or power is substituted for labor—the liability of the Surety Company for manual labor cannot be disputed, and the man-power is exchanged for electric power. The liability of the bond is not increased by the exchange one for the other, and a just interpretation of the contract to furnish material or perform labor in and about the construction of the roadway would include the electric power and current. In the progress of the age, the substitution of electric power for manual labor is taking place in every conceivable way. It was only a few decades past that most of the rock for public roads was crushed by manual labor. Contracts are not scraps of paper to be lightly treated, but should be carefully construed and kept by all parties, and we think the position taken here a correct and reasonable interpretation without any injustice to the Surety Company. The plaintiffs' charge for power, under the facts and circumstances of this case, we think, is included in the contract of the Surety Company.

In *Coal Co. v. Electric Light Co.,* 118 N. C., p. 236, (under a statute) it was held: "There is no contention that the terms of the act

do not include the fireman who shoveled the coal into the furnace. And, if it includes him, why should it not include the man who furnished the coal? One was as necessary to the operation of the concern as the other. And that was certainly one of the objects in view in passing the enactment. We must conclude that coal, which was necessary to run the concern, is embraced within the terms 'material furnished.' "

The case of *Scheflow v. Pierce* (and the National Surety Co. same defendant as in present case), 176 N. C., p. 93, was under a statute, but the Court in that case said: "It would be strange if the plaintiff, who did practically all the work on the job, should not have recourse to the bond for the amount due him, *solely because he did the work with a machine instead of with his own hands or by hiring laborers to work with their hands.*"

We do not think the power furnished to operate the rock crusher and cable cars comes under what defendants in their brief term "instrumentalities" or "tools," under the facts here. The power furnished by plaintiff is an integral part of the work. We would say that the "rock crusher" and "cable cars" were instrumentalities and not included in the contract.

In *Brogan v. National Surety Co.,* 246 U. S., p. 257 (62 Law Ed. 703), the Court said: (p. 260) "The supplies furnished by Brogan under these circumstances were clearly used in the prosecution of the work, just as supplies furnished for the soldier's mess are used in the prosecution of war. In each case the relation of food to the work in hand is proximate. . . . (p. 262) As shown by these cases, the act and the bonds given under it must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work. . . . (p. 263) But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines and dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers are materials supplied and used in the prosecution of the public work."

A wealth of authorities of counsel on both sides are collected and set forth in the above case as reported in 62 Law Ed.

The authorities are in conflict, but the great weight, we think, are in conformity with the position we take here.

For the reasons given, the judgment in the court below is

Affirmed.