**MARYLAND CASUALTY CO. v. OHIO RIVER GRAVEL CO. SAME v. OHIO RIVER GRAVEL CO. et al. JOHNSON et al. v. MARYLAND CASUALTY CO.**

*Circuit Court of Appeals, Fourth Circuit.*
*July 5, 1927.*

Nos. 2602–2604.

**1. Carriers ⟺194—Consignor is liable for freight.**

Consignor, on failure of consignees to make payment for freight, is liable therefor.

**2. Equity ⟺56—Equity regards substance only.**

Equity regards substance, and not form.

**3. Highways ⟺113(5)—One furnishing material to contractor under agreement to advance freight may recover purchase price, including freight, from surety.**

One furnishing material to contractor under agreement for sale at certain price in addition to freight, which was to be advanced by seller, is entitled to recover against surety, not only for materials, but for freight paid thereon, since freight became in effect a part of the purchase price fixed by contract, and recoverable as such.

**4. Highways ⟺113(5)—One furnishing material for public work is allowed recovery on theory of added value to completed work.**

One furnishing material for public work is allowed recovery on bond required in lieu of lien, on theory that to extent of material which he furnishes he adds to the value of the completed work or structure.

**5. Highways ⟺113(5)—Whether seller paid freight on materials under agreement, or by reason of liability as consignor, is immaterial as bearing on recovery against surety.**

Whether freight paid by seller of materials to highway contractor was paid in advance under agreement relative thereto, or whether exacted by carrier under seller's liability as consignor, is immaterial, as bearing on right of recovery therefor against surety.

**6. Highways ⟺113(5)—Bond for protection of materialman is to be liberally construed.**

Bond for protection of seller of material to highway contractor is to be liberally construed, so as to give him protection contemplated by statute.

**7. Principal and surety ⟺104(1)—Materialman, accepting notes from contractor, did not release surety without showing of prejudice.**

Where surety, completing contract, fails to show that it was in any way prejudiced by materialman's acceptance of notes, or by extension of credit thereby involved, acceptance of notes by seller did not operate to release surety from liability for that part of claim.

**8. Principal and surety ⟺105(2)—Materialman extending credit to contractor releases surety only when contract is departed from.**

Extension of credit by materialman to contractor releases surety only when it constitutes a departure from the contract.

**9. Principal and surety ⟺104(1)—Surety on contractor's bond was not released from liability for labor or materials by reason of bona fide extension of time for payment.**

A corporate surety on contractor's bond is not released from liability to claimant for labor or materials furnished by reason of extension of time of payment granted contractor, where extension is bona fide, and not in excess of a reasonable, usual, or customary credit.

**10. Highways ⟺113(5)—Bond for performance of contract to construct highway does not cover machinery and equipment or repairs thereto.**

Bond given for faithful performance of contract for construction of highway does not cover machinery and equipment used by contractor in carrying on work or repairs thereto.

**11. Highways ⟺113(5)—Incidental repairs to trucks used by contractor constructing highway held within protection of bond.**

Incidental repairs on trucks used by contractor constructing highway, necessary to keep them in running condition for performance of work, *held* within protection of bond given for faithful performance of contract.

**12. Highways ⟺113(5)—One furnishing gasoline and oil for trucks used in constructing highway may recover on contractor's bond.**

One furnishing gasoline and oil for use in operating trucks used by contractor constructing highways *held* entitled to recover therefor on bond given for faithful performance of contract.

Appeals from the District Court of the United States for the Northern District of

West Virginia, at Elkins; George W. Mc-Clintic, Judge.

Separate suits to determine liability by the Maryland Casualty Company against the Ohio River Gravel Company, against the Ohio River Gravel Company and another, and against W. W. Johnson and another, partners doing business under the firm name of Buckhannon Motor Sales Company. Decrees for defendant in the first two cases, and for plaintiff in the last case, and plaintiff and defendants in the last case separately appeal. Affirmed as to the first two cases, and as to last case reversed and remanded.

D. H. Hill Arnold, of Elkins, W. Va., and George F. Cushwa, of Baltimore, Md., for plaintiff.

Smith D. Turner, of Parkersburg, W. Va., for defendant Ohio River Gravel Co.

U. G. Young, of Buckhannon, W. Va. (J. C. McWhorter, of Buckhannon, W. Va., and Wm. T. George, of Philippi, W. Va., on the brief), for defendants Westfall and Buckhannon Motor Sales Co.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. W. J. and J. T. Gephart were partners engaged in road contracting. They entered into two contracts with the state of West Virginia for the construction of certain roads in Randolph and Upshur counties in that state, and gave bonds with the Maryland Casualty Company as surety for the faithful performance of the contracts and for the payment of the claims of laborers and materialmen. The contractors, having defaulted under their contracts leaving unpaid a number of these claims, the Casualty Company took over and completed the work and instituted suits for determining its liability under the bonds given. In these suits the District Court entered decrees allowing claims of the Ohio River Gravel Company and Zebedee Westfall, and denying the claim of the Buckhannon Motor Sales Company. The appeals before us challenge the decision of the court with respect to these claims, which we shall consider in the order named.

### Claims of Ohio River Gravel Company.

The claims of the Ohio River Gravel Company allowed by the court amount to $14,098.19 and $13,209.74 on the Randolph and Upshur county projects, respectively. The claims are for sand and gravel used in the construction of the roads and for freight paid thereon by claimant. The Casualty Company's objection to the claim filed against the Randolph county bond is that it embraces freight amounting to $8,683.50. Its objection to the Upshur county claim is that it embraces freight amounting to $6,111.90, and also that claimant accepted from the contractor notes extending the time of payment for a part of the amount due. Two questions arise, therefore, with respect to these claims: (1) Whether the freight paid on the sand and gravel by claimant is embraced within the terms of the bond; and (2) whether defendant has been released from liability as to that part of the Upshur county claim for which notes were accepted.

[1] With respect to the payment of freight, the facts are as follows: The sand and gravel were sold to the contractors at a price f. o. b. cars at New Martinsville, W. Va. On the shipments made to the Upshur county project, however, claimant prepaid the freight and charged it to the contractors. This was covered by the written contract of sale which provided that the contractors would pay the freight immediately upon receipt of invoice. There was no written contract covering the shipments made to the Randolph county project. Some of them were made to a prepay station, and, with respect to these, claimant prepaid the freight and charged it to the contractors. Others were made to a pay station, and, upon failure of the contractors as consignees to make payment, the freight was collected by the railroad company from claimant for which, as consignor, it was liable. Coal & Coke Ry. Co. v. Buckhannon River Coal & Coke Co., 77 W. Va. 309, 87 S. E. 376, L. R. A. 1917A, 663. There is no question but that all of the sand and gravel shipped by claimant was used in building the roads whose construction was guaranteed by the bonds in suit, and it appears that a part thereof was used by the Casualty Company after it had taken over the performance of the contract.

With regard to the taking of the notes, it appears that on July 29, 1923, the contractors executed to claimant their 30-day notes for $1,822.22 and $4,123.19, covering indebtedness for shipments of sand and gravel. These notes were later renewed, and interest paid thereon to October 29, 1923. It appears that substantial payments were made to the contractors subsequent to the execution and extension of the notes; but it does not appear that the giving of the notes enabled the contractors to obtain these payments, or that it in any way prejudiced the rights of the Casualty Company.

[2, 3] We entertain no doubt on the propo-

sition that claimant can recover under the bonds for the freight paid on the sand and gravel, as well as for the price thereof at New Martinsville. It is true that the price fixed by the contract was f. o. b. cars at New Martinsville; but as to shipments made for the Upshur county project it was agreed that claimant should prepay the freight, and it was a part of the contract of sale that the contractors should pay to claimant the freight as well as the f. o. b. price of the material. While there was no written contract as to shipments made to Randolph county, the same agreement seems to have been implied, at least as to the shipments made to prepay stations. Equity regards substance, and not form, and in substance the transaction between the parties was not a loan of money for the payment of freight, but a sale upon an agreement to pay for the material purchased a certain amount in addition to the freight, which claimant was to advance. The freight, therefore, became in effect a part of the purchase price fixed by the contract and recoverable as such. Barker & Stewart Lumber Co. v. Marathon Paper Mills Co., 146 Wis. 12, 130 N. W. 866, 36 L. R. A. (N. S.) 875.

[4] One who furnishes material for a public work such as this is allowed recovery on the bond required in lieu of lien on the theory that to the extent of the value of the material which he furnishes he adds to the value of the completed work or structure. In this case claimant has in effect furnished material necessary to the building of the roads, not at the point of shipment but at the place of use. It had a value there greater by the amount of the freight paid than its value at the point of shipment. In such case, to hold that claimant can recover only the value at the point of shipment, when he has in effect furnished the material at the place of use by paying the freight charges and having it transported there, would, in our opinion, be both unjust and absurd. The general holding is that in such cases recovery may be had for the expense of transportation. U. S. v. D. L. Taylor Co. (D. C.) 268 F. 635; U. S. v. Morgan (C. C.) 111 F. 474; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; U. S. F. & G. Co. v. U. S., 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 55 L. Ed. 72; note 30 A. L. R. 466.

[5] And we think that whether the freight was paid in advance under agreement, or whether exacted of claimant under its liability as consignor, makes no difference. In passing upon a similar point in Barker & Stewart Lumber Co. v. Marathon Paper Mills Co., supra, the Supreme Court of Wisconsin said:

"The Marshall-Wells Hardware Company do business at Duluth, Minn., and as a convenience to Painter they advanced the freight on the hardware which they sold and shipped to him, amounting to $72.81, and the court allowed this amount on the theory that it was in substance a part of the purchase price for the materials. It is objected that it was not agreed in advance that the freight charges were to be part of the price of the goods. Looking at the substance of things rather than their names, we think that the item was properly allowed as a part of the purchase price of the material, although it may be called an advance of money. Had the contract been to deliver the goods in Wausau, freight prepaid, the plaintiffs would unquestionably have added the freight to the purchase price, and it would as unquestionably have been allowed. The exact form of the transaction cuts little figure. We think the amount was properly allowed as part of the delivered purchase price."

[6] The question presented here is not that presented in the cases which pass upon the right of a common carrier to assert a lien for freight under a mechanic's lien statute or to recover under a bond given in lieu thereof. In those cases the questions which arise are whether the lien statute was intended to cover claims for which a lien existed at common law and whether the carrier, by surrendering possession of the property transported and thereby waiving its lien, has not waived also its right against the surety by so placing itself that the surety cannot be subrogated to the security which the law gave. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717; Seventh Nat. Bank v. Shenandoah Iron Co. (C. C.) 35 F. 436. But in the case of a seller of materials, who prepays the freight to the point of destination, no such questions arise. He has no common-law lien for freight, and he relinquishes no rights to which the surety could be subrogated. It is for his protection that the bond is required, and it is settled law that such bond is to be liberally construed, so as to grant him the protection contemplated by the statute. Hartford Accident & Indemnity Co. v. Board of Education (C. C. A. 4th) 15 F.(2d) 317, 320; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; U. S. use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437.

In construing a very similar bond, this court has held that it covered the rental of scows used for the transportation of material, and also towage charges paid for that purpose. Taylor v. Connett (C. C. A. 4th) 277 F. 945. And the Supreme Court has held that where a plant of cars, track, and equipment was furnished for the construction of a public work, the rent reserved, together with the loading and freight expenses incident to bringing the plant to and from the place of work, are liabilities covered by such a bond. Illinois Surety Co. v. John Davis Co., supra. We see no difference in principle between these cases and the case at bar. If a towage charge paid to have materials transported to the place of use is within the terms of the bond, there is no reason why a freight charge paid for like purpose should not be held to be within its terms also. If the lessor of property is protected by the bond as to freight charges paid to have his property transported to the place of use, no sound reason has been suggested why the seller who pays freight charges for like purpose should not be similarly protected.

[7] Nor do we think that the Casualty Company has been released from liability for that part of the claim for which notes were accepted. As stated above, it has not been shown that it has been in any way prejudiced by the giving and acceptance of the notes or by the extension of credit thereby involved, and this alone would be fatal to its contention. Board of Commissioners v. Clemens, 85 W. Va. 11, 100 S. E. 680, 7 A. L. R. 373; Pickens County v. National Surety Co. (C. C. A. 4th) 13 F.(2d) 758; New Amsterdam Casualty Co. v. U. S. Shipping Board (C. C. A. 4th) 16 F.(2d) 847; Atlantic Trust Co. v. Laurinburg (C. C. A. 4th) 163 F. 690.

[8] But, quite apart from this, extension of credit to the contractor can be held to release the surety only on the theory that it is a departure from the contract, and it cannot be said that such an extension of credit by one of the furnishers of materials to the contractors as is here complained of, is in any sense a departure from the terms of the contract. The very point was before the Supreme Court of the United States in U. S. Fidelity & Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242. In that case, which was an action to recover on a bond filed under the Act of Congress of August 13, 1894 (Comp. St. § 6923), claim was made by one who had furnished bricks to the contractor. The bonding company denied liability on the ground that claimant, without its knowledge or consent, had granted an extension of time to the contractor for payment for the bricks furnished, accepting his notes due in 30 and 60 days. In denying the contention of the bonding company, the court said:

"Inasmuch as neither the contractor nor his subcontractors can secure themselves by a mechanic's lien upon the proposed building, the government, solely for the protection of the latter, requires a covenant for the prompt payment of their claims, and the same security that it requires for the performance of the principal contract. In this covenant the surety guarantees nothing to the principal obligee—the government—though the latter permits an action upon the bond for the benefit of the subcontractors. The covenant is made solely for their benefit. The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days, or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability he ought not to complain when that uncertainty becomes certain."

[9] The law seems well settled that a corporate surety on a contractor's bond is not released from liability to a claimant for labor or materials furnished, by reason of an extension of time of payment granted by the claimant to the contractor, where the extension is bona fide and not in excess of a reasonable, usual, or customary credit. U. S. use of Delaware Hardware Co. v. Lynch (D. C.) 192 F. 364; U. S. Fidelity & Guaranty Co. v. U. S. (C. C. A. 3d) 178 F. 692; Id. (C. C.) 172 F. 268; U. S. v. U. S. F. & G. Co. (C. C.) 178 F. 721; U. S. ex rel. W. W. Montague & Co. v. Axman (C. C.) 153 F. 982.

### Claim of Zebedee Westfall.

The claim of Zebedee Westfall is for cement sold to the contractors and used by them in the construction of the road in Upshur county. The District Judge allowed the claim in full, amounting to $18,327.23, which included a note of $6,965.55 and interest. It

is the inclusion of the amount of this note of which the Casualty Company complains, its contention being, as in the case of the claim of the Ohio River Gravel Company, that the taking of the note and the extension of the time of payment resulting therefrom, released the surety to that extent. It appears that claimant began furnishing cement on April 26th, and continued to furnish it until July 16th, the contract providing for payment within 30 days. On June 25th, the note was given covering the cement for which payment was then due. The note ran for 30 days, and was first renewed for 15 days, and later to September 8th. There is no evidence of any bad faith on the part of claimant, or of any loss or detriment sustained by the Casualty Company as a result of the taking or renewal of the note or of the extension of the time of payment which resulted therefrom. For the reasons given in discussing the same point in connection with the claim of the Ohio River Gravel Company, we think that the decision of the District Judge was correct.

### Claim of Buckhannon Motor Sales Company.

The claim of the Buckhannon Motor Sales Company for $593.14 was denied by the court, and the claimant has appealed. The claim is for a garage account which embraces labor performed on the trucks of the contractors, gasoline and oil furnished them, and also an engine and a number of tires. It was shown that all of these were furnished for trucks which were necessarily used on the work of the contractors on the Upshur county project, and that they were necessary to the operation of the trucks. The question which arises is whether the items embraced in the account, or any of them, are within the protection of the bond. There was presented also a question as to the effect of the taking of a 60-day note, but, in view of what has already been said, that need not be further considered.

[10] In denying this claim the learned District Judge was no doubt applying the well-recognized rule that a bond such as this does not cover machinery and equipment used by the contractor in carrying on the work, or repairs to such machinery and equipment; but we think that in denying some of the items embraced in the account he carried the application of the rule too far.

[11] It is undoubtedly true that repairs which add materially to the value of the equipment and render it available for other work are no more within the protection of the bond than the equipment itself; and one, for instance, who supplies a tire or a motor for a truck is no more entitled to recover under the bond than one who furnishes the truck itself. On the other hand, there are repairs of an incidental and inexpensive character, such as most of those embraced in the account seem to have been, which do not in any true sense add to the value of the equipment, but are incidental to the carrying on of the work and represent merely ordinary wear and tear or its equivalent. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 721. The labor done in making such repairs is in reality labor done in the carrying on of the work, and we think should be treated as such. Thus a blacksmith who sharpens the plows and drills or repairs the carts used in making an excavation would undoubtedly be protected in the same way as other laborers (Brogan v. Nat. Surety Co., 246 U. S. 257, 261, 262, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776), and we see no difference between his case and that of a mechanic who keeps in repair and running condition a fleet of trucks used on the job. The labor of such a one adds to and becomes a part of the finished structure just as truly as does the labor of one who wields a pick or shovel. And, of course, granting the principle, it can make no difference whether the mechanic does the work at the scene of the operation or in his own garage. We think that those items of the account which represent mere incidental repairs upon the trucks used on the job necessary to keep them in running condition for the performance of the work, should have been allowed as being within the protection of the bond.

[12] We think, too, that claimant is entitled to recover for the gasoline and oil furnished for use in operating the trucks. City Trust, S. D. & Surety Co. v. U. S. (C. C. A. 2d) 147 F. 155; Plyler v. Elliott, 191 N. C. 54, 131 S. E. 306; Town of Cornelius v. Lampton, 189 N. C. 714, 128 S. E. 334.

It follows that in cases 2602 and 2603 the decrees of the District Court are affirmed. The decree in case 2604 is reversed and the cause is remanded, to the end that the District Court may determine the amount to which claimant is entitled under the principles here decided and enter a decree accordingly.

No. 2602: Affirmed.

No. 2603: Affirmed.

No. 2604: Reversed and remanded.