## UNITED STATES v. HERCULES CO. et al. (ROYAL ROUTE CO., Intervener).

### No. 504.

District Court, S. D. Mississippi, W. D. Sept. 10, 1931.

As Modified on Denial of Rehearing Sept. 25, 1931.

See, also, 52 F.(2d) 454.

W. I. McKay, of Vicksburg, Miss., for intervener.

Brunini & Hirsch, of Vicksburg, Miss., for defendants.

HOLMES, District Judge.

The plaintiff brought this action upon a bond given to it in pursuance of the Act of Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (40 USCA § 270). The principal obligor in the bond and its sureties are the defendants. Under the contract, dated May 28, 1925, the Hercules Company, Limited, the contractor, for a stated consideration, agreed to "furnish all the necessary labor, plant, and material," and to do certain public levee work in the White River district in the state of Arkansas. The bond guaranteed the timely and faithful performance of the contract, with the additional obligation, required by the statute in such cases, that the contractor should "promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract."

The petitioner, Royal Route Company, Limited, intervened in due time, claiming a balance of $1,756 upon an indebtedness due it for labor and material alleged to have been furnished the contractor, which it contends is protected by the bond. A jury being waived, the issues of fact and law, by consent of the parties, have been submitted to the court for its findings and judgment.

There were two items comprising the above balance. The first was originally for $3,000, for transporting a large and expensive dredge and plant equipment from Sycamore Landing, La., to Laconia Landing, Ark., where the work was to be done, a distance of 365 miles. The cumbersome machinery was loaded on a steamboat and two river barges provided by the petitioner, a common carrier of freight, for shipment from the location where it was purchased by the contractor to the point of destination. The boat, towing the barges, operated by the servants of the carrier, and propelled by its own steam power, proceeded to the point of destination, where the cargo was unloaded by the contractor; no part of the above item being for loading or unloading. This amount, which petitioner denominates towage, but which we shall call the freight item, by a payment specifically made has been reduced to $1,442.

Because of the inherent nature of the account, the sureties deny that it is within the obligation of the bond. Numerous decisions have interpreted the statute and defined the obligations of sureties in bonds given under it. It has been stated and reiterated, time and time again, that the act should be liberally construed for the benefit of laborers and materialmen. Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; U. S., for Use of Hill, v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 377, 37 S. Ct. 614, 61 L. Ed. 1206; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; Fleischmann Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; United States, for Use of Samuel Hast-

ings· Co., v. Lowrance (C. C. A.) 252 F. 122. But there are reasonable limits even to a liberal construction of the statute, and claims falling beyond its letter and manifest purpose will be rejected.

The intervener's charge of $3,000 was not towage, and no part of it was for cartage, but all of it was for services rendered to the contractor by a common carrier in transporting property bought by it for use on this and such other work as circumstances might require. If the seller had added $3,000 to the purchase price and agreed to deliver· the machinery f. o. b. at Laconia Landing, all will agree that ·no part of the purchase money would have been secured by the bond. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 721. But as the contractor purchased the machinery located at a distance of 365 miles from the place where it was needed, and presumably paid $3,000 less for it than it would have been willing to pay at the point of operations, it is claimed that the transportation charges are secured to the carrier by the obligation of the sureties.

· In United States v. Hyatt (1899) 92 F. 442, the Fifth Circuit Court of Appeals held that a claim for freight or transportation charges by a railroad company for carrying stone to be used in a public work was neither labor nor material within the meaning of the Act of August 13, 1894 (28 Stat. 278), and was not protected by the bond required by the United States from the contractor. The court said it was plain that the railway company did not supply "materials," for the stone which it carried was not supplied by·it, and that Congress could not have intended to include in the term "labor," as used in this act, the freight charges of a railroad on materials carried by it. The decision has never been overruled, and was expressly followed in 1925 in Mandel v. United States, 4 F.(2d) ·629 (C. C. A. 4th Cir.), but in City of Stuart v. American Surety Co., 38 F.(2d) 193 (5th Cir. 1930), in construing a bond given under a Florida statute, which was an adoption· of the federal act, the court held that freight, switching, and demurrage charges on carload material used in the performance of a public work was for "labor" which rendered the sureties liable. While the court pointed out that the bond in that case was more explicit than the statute, it characterized as narrow the meaning given the word "labor" ·in the Hyatt Case, and the argument of the opinion would seem to indicate a departure from the former ruling.

If this be true, it is only necessary here to point out the distinction between freight on material, such as sand, gravel, and cement, which is actually consumed in the process of construction, the entire value of which inures to the benefit of the work, and freight on an expensive dredge or dragline. lasting many years, with reasonable repairs, and available on many jobs; the original cost of which in some instances would doubtless exceed the full penalty of the bond, leaving only a pro rata protection to smaller claimants.

Freight on sand and gravel, paid by the seller under a contract express or implied so to do, has been held to constitute a part of the purchase price and to come within the bond in a case where the seller, not the carrier, was the claimant. Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514. The last-mentioned case is cited with approval in City of Stuart v. American Surety Co., supra. An analysis of both cases supports the conclusion that, notwithstanding the Hyatt Case, the Fifth Circuit is now inclined to the view that when the seller pays the freight it is in fact a part of the purchase money, and when the contractor pays it, or agrees to do so, it is labor furnished the contractor, and that in each instance it is secured by the bond. The reasoning of the two cases together is that freight is allowed either as labor or material furnished the contractor because it is an ingredient of the cost of the material, and that therefore, since the full value of the material has gone into the work, the sureties should be liable for it. This reasoning does not apply to the instant case, or any case where the capital investment of plant equipment is not allowed, because we have seen that such cost is not secured by the bond. Therefore, the freight should not be.

Since cartage and towage are allowed, Title Guaranty & Trust Co. of Scranton, Pa., v. Crane Co., 219 U. S. 24, 34, 31 S. Ct. 140, 55 L. Ed. 72, and freight on equipment is not, we are asked how to distinguish them and where to draw the line between the long and short haul. Undoubtedly in borderland cases this will be a difficult thing to do, and there will be instances where reasonable men may draw different conclusions from the same facts, but like any other question of fact, it must be determined by the jury, judge, or other fact-finding tribunal, guided by the definite and underlying principle that transportation charges which enter into the cost of the property, or increase its fair value, in the general vicinity of the work, are not within the bond unless the reasonable

price of the thing is also, but that such charges which do not affect reasonable cost or fair value, and are incurred merely for labor or material used in moving the property out to the work after it has reached its general destination, or in removing it from one part of the job to another, or, in other words, whatever may fairly be deemed labor or material used exclusively in the prosecution of the work solely under the particular contract, is protected by the bond, regardless of whether or not its original cost is considered labor or material furnished the contractor.

The instances in the authorities where claims for freight have been allowed against the sureties are of three classes:

First, where the seller has paid the freight, or agreed to pay it, and the material furnished is of a character wholly susceptible of use, and in fact used, in the construction of the work, such as slag, sand, gravel, cement, beams, bolts, washers, and nails. It makes no difference whether the material is directly incorporated into the work or structure or used for fuel, feed, blasting, scaffolding, or drilling, or whether it is furnished the contractor or subcontractor, but it must be actually and practically consumed in the process of construction. In these cases, the transportation charges have been allowed the seller of the material as representing substantially a part of the purchase price. In other words, the claims are allowed the seller for "materials" furnished within the intent of that word as used in the statute and bond. United States v. Morgan (C. C.) 111 F. 474, 488; Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514; Id. (C. C. A.) 21 F.(2d) 744.

The second class is where the contractor has agreed to pay the freight, and the nature of the material is the same as that just mentioned. In these instances the services performed by the carrier in transportation have been regarded as "labor" furnished the contractor, as that word is used in the statute. Cartage, towage, lighterage, and freight charges by rail or water, either for a long or short haul, are alike included in the comprehensive meaning of the word "labor," because the full value of the services is furnished the contractor and inures to the benefit of the work. City of Stuart v. American Surety Co. (C. C. A.) 38 F.(2d) 193; State v. Ætna Casualty & Surety Co. (Del. Sup.) 145 A. 172, 173.

Third, freight upon hired teams, tools, machinery, or plant equipment constitutes the remaining classification. The use of such property is deemed labor furnished the contractor and its hire held to be within the protection of the bond. The work is performed by the claimant "through the use of its equipment." United States v. Illinois Surety Co. (C. C. A.) 226 F. 653, 662. The use of a derrick or lighter to transport stones and put them in place is in principle as truly labor as if hand power were employed, which "is doubtless what an ancient Egyptian contractor would have done." United States v. Port Deposit Quarry Co. (D. C.) 272 F. 698, 699; Id. (C. C. A.) 277 F. 1019. The freight on such equipment is regarded as an item of the rental, and as all of the fair usufructuary value of the property, during the period of construction, goes into the work, the freight, as an ingredient thereof, is likewise included. Thus the obligation of the bond, which is for the construction of the work, is held to be to make full payment of the value of all labor and materials contributed to the accomplishment of the object of the contract. If the contribution had not been made, the sureties would have had to make it. The full value of machinery and other substantial property owned by the contractor is not entirely contributed to reduce the obligation of the sureties, and, therefore, we find a different rule with reference to the purchase price of such property, including the freight thereon whenever the freight is a substantial ingredient of the purchase price, as in truth it often is.

No case has been cited or noted where freight on capital equipment owned by the contractor has been allowed the seller or the carrier in a claim under the federal act. The reason is potent and obvious. It is a sound economic principle that cost of transportation is an ingredient of fair market value. When the labor consists in transporting plant equipment, the cost of transportation of which increases the capital investment of the contractor but does not enter into the work, it is not labor or material furnished the contractor in the prosecution of the work, and therefore is not protected. In such instances, the full value of the plant equipment does not enter into the work. Consequently, it cannot be said that the freight charges are furnished the contractor either in the form of labor or materials. The letter and spirit of the bond under the statute is thus given effect by binding the sureties for labor and materials furnished the contractor only to the extent that each is actually supplied.

Because freight on rented equipment is recoverable under the bond as "properly included with the fixed rental," Illinois Surety

Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 617, 61 L. Ed. 1206, the intervener contends that freight on bought equipment should be also, saying that the law puts no such penalty on ownership. The argument proves too much, since, by the same logic, the price of the equipment would be included as well as the rental. We have seen why the creditor who sells tools, machinery, or an operating plant which may be used on many jobs is denied security under the bond for the full purchase price, and the difficulty of apportioning what part of it is used or worn out in the work of any one contract has caused such claims to be entirely rejected by the courts, which out of necessity are practical in the administration of justice. Where a fair hire is agreed upon, the difficulty is removed and the rule ceases. Taylor v. Connett (C. C. A.) 277 F. 945; Utah Construction Co. v. United States (C. C. A.) 15 F. (2d) 21; Id.. 273 U. S. 745, 47 S. Ct. 344, 71 L. Ed. 870. Likewise, where the tools, such as drills, by their very nature and the use to which they are put, are completely consumed in the work, the cost of the same is allowed. National Surety Co. v. United States, 228 F. 577, 586, L. R. A. 1917A, 336, reversed on other grounds 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776.

In conclusion, upon the item under consideration, I find that the charge of $3,000 for transportation of the dredge and plant equipment was in truth and in fact a part of the cost of the property delivered at Sycamore Landing, and was not labor furnished the contractor by the carrier, in the prosecution of the work, for which the sureties are liable.

The other item, which comprises the balance of intervener's claim, is for 50 tons of coal at an agreed price of $314, no payment having been made on the same, the debtor having specifically applied, as it had a right to do, the draft of August 3, 1925, to the freight item as shown by his letter of that date, made Exhibit 1 to Guibet's testimony, in which he says: "This is to apply on account of towing our machine from Sycamore Landing to Laconia Landing."

The burden of proof is on the intervener to show that the coal was furnished the contractor and used in the construction of the work provided for in the contract. The proof fails to show this. The Hercules Company admittedly was carrying on work at a different place under a separate and distinct contract with the government. The contract and bond under consideration were with reference to what is known as the Snow Lake job.

The work under the other contract, known as the Elaine job, was being done at Elaine, Ark., about 40 miles away.

The inference from the testimony is reasonable that a portion of the coal was used for fuel in transporting the machine under its own motive power to Sycamore Landing and in loading it on the barge, but there is not a scintilla of evidence as to what portion was so consumed. There is the same uncertanty in the proof as to what portion of the coal was used in unloading the machine at Laconia Landing and moving it out to the job. That there was a balance left is quite probable, but the evidence fails to disclose what it was or what became of it. The statement of the witness that "probably some of it was used on the job" is palpably a mere surmise or opinion not based on actual knowledge, and incompetent as evidence.

For the reasons indicated, the claim of the intervener against the sureties will be denied, and judgment may be entered accordingly.

