## CONTINENTAL CASUALTY CO. v. CLARENCE L. BOYD CO.

### No. 2788.

Circuit Court of Appeals, Tenth Circuit.

Jan. 13, 1944.

116

Clayton B. Pierce, of Oklahoma City, Okl., for appellant.

R. D. Hudson and W. E. Hudson, both of Tulsa, Okl., for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

PHILLIPS, Circuit Judge.

On May 3, 1941, the Central Construction Company[1] entered into a contract with the United States to construct certain improvements at Municipal Airport No. 1 in Tulsa, Oklahoma. On the same day, Central, as principal, and the Continental Casualty Company,[2] as surety, executed a payment bond pursuant to the requirements of the Miller Act, 40 U.S.C.A. §§ 270a and 270b, 49 Stat. 793, for the protection of all persons supplying labor and material in the prosecution of the work provided for in such contract.

Tom W. Kelly brought a suit to recover on the payment bond. A number of claimants, including the Clarence L. Boyd Company,[3] filed intervening petitions. Boyd asserted a claim for rental of certain dirt-moving equipment furnished to, and used by, Central in the prosecution of the work provided for in the contract, and also a claim on open account for certain materials consumed in the prosecution of such work and certain repair parts, replacements, and appliances furnished to Central to replace appliances and parts of the rental equipment worn out in the performance of such work and to maintain such rental equipment in repair. The claims were referred to a Special Master. The Master found that there was due to Boyd for rental $11,369.42 and on the open account $2,562.40 and recommended judgment accordingly. The Casualty Company filed exceptions to the Master's report. The trial court overruled the exceptions and entered judgment for the amount recommended by the Master, with interest from December 15, 1941, until paid. The Casualty Company has appealed.

Boyd and Central entered into four leases on May 2, 1941, by which Boyd leased the equipment to Central for a stipulated rental with an option to purchase. The leases ran until August 15, 1941, but gave Central an option to renew them for an additional period of two months. On August 15, 1941, new leases were entered into extending the lease period to November 25, 1941.

Counsel for the Casualty Company contends that the renewal leases constituted a novation and discharged the rent that had accrued under the original leases. The renewal leases recited that they embodied the whole agreement between Central and Boyd and that no agreement contrary to any of the terms thereof had been made. There was evidence that the only change effected by the renewal leases was the extension of the lease period. There is nothing in the renewal leases or in the surrounding facts and circumstances to justify a conclusion that the parties intended to discharge the unpaid rental which had accrued under the original leases.

Repair parts, appliances, and accessories which add materially to the value of the equipment and render it available for other work are not within the coverage of the payment bond provided for in § 270a, supra.[4]

Rental for equipment used in the performance of the work provided for in the contract, parts, equipment, and appliances which are necessary to, and are wholly consumed in, the performance of such work, and current repairs of an incidental and comparatively inexpensive character which do not add substantially to the value of the equipment and compensate only for ordinary wear and tear, are within the coverage of the payment bond.[5]

[1] Hereinafter called Central.

[2] Hereinafter called the Casualty Company.

[3] Hereinafter called Boyd.

[4] Maryland Casualty Co. v. Ohio River Gravel Co., 4 Cir., 20 F.2d 514, 518; United States v. James Baird Co., 64 App.D.C. 12, 73 F.2d 652, 654.

[5] Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 383, 37 S.Ct. 614, 61 L. Ed. 1206; Brogan v. National Surety Co., 246 U.S. 257, 262, 38 S.Ct. 250, 62

■ Certain material was furnished by Boyd to Central to convert a stationary light plant into a portable light plant. Such material was used and substantially consumed in the performance of the work provided for in the contract.

In the prosecution of the work provided for in the contract with the leased equipment, parts, appliances, and accessories wore out, necessitating repairs and replacements. The repair parts and replacements furnished by Boyd to Central were to effect such repairs and replacements, with the exception of one tool hereinafter noted. It cost Boyd approximately $6,000.00 for repairs to restore the equipment when it was returned to it.

■ Many of the parts furnished were comparatively inexpensive and were used in the ordinary and current repair of the leased equipment. There were, however, certain items which constituted substantial replacements, and which the evidence showed were not wholly consumed in the performance of the work under the contract, and were available for other work. In this category are the items covered by invoice No. 1171, one blade; invoice No. 1281, two disc 32 inch; and invoice No. 1419, 80 feet 42 inch, 4 ply grader belt. The charges for these items were $39.95, $104.21, and $494.17 respectively, or an aggregate of $638.33. There were other items of a somewhat similar character, but the evidence warrants the conclusion that they were substantially consumed in the performance of the work under the contract.

■ Among the items allowed in the open account was a pipe wrench covered by invoice No. 1471. This was not a repair part and was not consumed in the prosecution of the work. It should have been disallowed. The charge therefor was $12.84.

We conclude that the items in the open account within the coverage of the bond amounted to $1,911.23.

■ The bond was made in Oklahoma and was to be performed there. Liability for interest must, therefore, be determined by Oklahoma law.[6]

23 O.S.A. § 6 reads: "Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

The amount of the rental due was capable of being made certain by calculation.

■ Central was liable to Boyd for interest on the items in the open account[7] and the Casualty Company was liable as surety for interest on the items thereof within the coverage of the bond.[8]

The judgment will be modified by reducing the amount of recovery from $13,931.82 to $13,280.65, and as modified, affirmed.

BRATTON, Circuit Judge, is of the opinion that only one or two items in the open account are doubtful; that they are incidental and nominal in amount; and that therefore the judgment should be affirmed without reduction in sum.

L.Ed. 703, L.R.A.1918D, 776; Taylor v. Connett, 4 Cir., 277 F. 945, 948; Massachusetts Bonding & Ins. Co. v. United States, 5 Cir., 88 F.2d 388, 389, 390; United States v. Hercules Co., D. C.Miss., 52 F.2d 451, 454; Maryland Casualty Co. v. Portland Constr. Co., 2 Cir., 71 F.2d 658, 662.

6 Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 381, 37 S.Ct. 614, 61 L. Ed. 1206.

7 Saunders v. McKee, 177 Okl. 357, 58 P.2d 1234, 1235, 1236.

8 United States v. Ambursen Dam Co., D.C.Cal., 3 F.Supp. 548, 554.